KOPKE, Appellant, v. RANNEY and others, Respondents.

*March 7—April 6, 1962.*

For the appellant there was a brief by *Jerome D. Grant* and *Nathaniel D. Rothstein,* and oral argument by *Jack E. Keyes* and *Bernard J. Plotkin,* all of Milwaukee.

For the respondents there was a brief by *Goldberg, Previant & Uelmen* of Milwaukee, and oral argument by *David L. Uelmen.*

FAIRCHILD, J.   1. *Rule requiring exhaustion of internal remedies.* The complaint states, or sufficiently implies, that plaintiff, acting within his rights as a member of the union, questioned the administration of the affairs of the union; that several members and officers, for the purpose of silencing plaintiff, agreed among themselves to, and did, bring about plaintiff's suspension on unfounded charges, and then, by refusing, without justification, to accept his dues, caused his expulsion. The gist of the charge is that the action was

brought about by those who acted in bad faith from improper motives.

Plaintiff did not allege whether or not there was any remedy available to him within the union, nor that the remedy, if any, would be futile, or involve long delay. He concedes in his brief that he "failed to exhaust the review facilities of the union constitution and by-laws after these trumped-up and unfounded charges were acted upon by the preliminary executive board."

The problem of judicial review of discipline imposed on members by associations generally [1] and labor unions in particular [2] has long been perplexing. [3]

One of the grounds upon which expulsion of a union member has been invalidated is that, "The expulsion was in bad faith because the purported ground was only a pretense for getting rid of a troublesome member." [4] In substance this is the claim of the present plaintiff.

It is the general rule, however, that when a member alleges wrongful expulsion and asks a court to compel reinstatement, he must show that he has exhausted his remedies within the union or other association. [5]

---

[1] See Chafee, The Internal Affairs of Associations Not For Profit, 43 Harvard Law Review (1930), 993; Comment, Exhaustion of Remedies in Private, Voluntary Associations, 65 Yale Law Journal (1956), 369; Anno. Club-Suspension or Expulsion, 20 A. L. R. (2d) 344; Religious Body-Suspension-Expulsion, 20 A. L. R. (2d) 421; Professional Association-Expulsion, 20 A. L. R. (2d) 531.

[2] Anno. 74 A. L. R. (2d) 783.

[3] Summers, Legal Limitations on Union Discipline, 64 Harvard Law Review (1951), 1049; Cox, The Role of Law in Preserving Union Democracy, 72 Harvard Law Review (1959), 609; Summers, The Law of Union Discipline: What the Courts do in Fact, 70 Yale Law Journal (1960), 175.

[4] Cox, The Role of Law in Preserving Union Democracy, 72 Harvard Law Review (1959), 609, 615, footnote 23.

[5] 87 C. J. S., Trade Unions, p. 816, sec. 35 (d) (2); 4 Am. Jur., Associations and Clubs, p. 475, sec. 31. See also articles cited *supra*, footnotes 1 and 3.

The rule requiring exhaustion of so-called internal remedies is subject to exceptions, principally where the appeal or similar remedy afforded within the union would probably be futile or would involve inordinate delay, or where the disciplinary action complained of is demonstrably void for lack of notice or hearing or other reasons, or beyond the jurisdiction of the union.[6]

In the Labor-Management Reporting Act of 1959, the congress set a standard of promptness in the operation of an internal remedy:

"No labor organization shall limit the right of any member thereof to institute an action in any court, or in a proceeding before any administrative agency . . . *Provided,* that any such member may be required to exhaust reasonable hearing procedures (but not to exceed a four-month lapse of time) within such organization, before instituting legal or administrative proceedings against such organizations or any officer thereof . . ." [7]

Professor Summers has analyzed the policy considerations for requiring exhaustion of remedies as follows:

"The doctrinal declaration that courts will not intervene in internal union disputes until all appeals within the union have been exhausted has, in theory, three underlying policies. First, union appellate tribunals may take corrective action, thus reducing the burden on the courts. Second, the benefit of the expert judgment of these tribunals might aid courts in making more-responsible decisions. Third, the deep and pervading principle of preserving the autonomy of unions constrains courts to give the union full responsibility and opportunity to correct its own mistakes. Against these policies is balanced the policy of providing reasonably prompt and effective judicial protection to important legal rights." [8]

---

[6] See Summers, The Law of Union Discipline: What the Courts do in Fact, 70 Yale Law Journal (1960), 175, 207.

[7] 29 USCA, p. 53 (1961 pocket part), sec. 411 (a) (4).

[8] Ibid.; footnote 6.

In a number of cases where an expelled member did not seek reinstatement, but damages, courts have held that he need not have exhausted the remedies afforded within the union or association before bringing action.[9] Were we to follow these decisions, plaintiff would prevail here, for he seeks only damages. The distinction has been criticized, however, and we consider the criticism sound.

"The stated rationale behind this exception is that since appeals within the union cannot produce damages but can only reinstate, an appeal would provide no redress. It is true that the appellate body will seldom order payment of damages by the local, but it is not impossible or unknown. Moreover, this rationale prevents the union from reducing the damages by ordering reinstatement on appeal, thus allowing the member to take advantage of an error by the local to collect the cash surrender value of his membership. Most important, however, is the fact that the result directly repudiates the basic policy underlying the exhaustion requirement, for it permits the courts to adjudicate the merits of the discipline although there is still a tribunal available within the union to make that judgment." [10]

In the provision, previously quoted, from the federal act, recognizing, although limiting the requirement of exhaustion

---

[9] *Benson v. Screwmen's Benevolent Asso.* (1893), 2 Tex. Civ. App. 66, 21 S. W. 562 (where plaintiff sought both damages and reinstatement, the court separated the claims and awarded damages) ; *Thompson v. Grand International Brotherhood of Locomotive Engineers* (1905), 41 Tex. Civ. App. 176, 91 S. W. 834; *Brotherhood of R. Trainmen v. Barnhill* (1926), 214 Ala. 565, 108 So. 456, 47 A. L. R. 270; *Independent Order, S. & D. J. v. Wilkes* (1910), 98 Miss. 179, 53 So. 493, 52 L. R. A. (N. S.) 817; *St. Louis S. W. R. Co. v. Thompson* (1908), 102 Tex. 89, 113 S. W. 144, 19 Ann. Cas. 1250; *Grand International Brotherhood of Locomotive Engineers v. Green* (1923), 210 Ala. 496, 98 So. 569; *Bauer v. Samson Lodge, K. P.* (1885), 102 Ind. 262, 1 N. E. 571; *Mullen v. Seegers* (1927), 220 Mo. App. 847, 294 S. W. 745.

[10] Summers, Legal Limitations on Union Discipline, 64 Harvard Law Review (1951), 1049, 1089.

of internal remedies, the congress did not distinguish between actions for reinstatement and actions for damages.

Plaintiff here has not challenged the general rule requiring exhaustion of remedies within the union. He points out, however, that he has alleged that suspension and expulsion resulted from a conspiracy of the union with several officers and members. He argues that he has brought himself within an exception to the rule because pursuit of internal remedies would be futile if there is a conspiracy among the officers and the "union." He has not, however, alleged what the internal remedies are, nor any facts, other than the allegation of conspiracy, to show that the members of the appellate body were parties to the conspiracy, or under the control of the individual defendants.

We do not view the statement of a cause of action for conspiracy as a reason for not requiring the prior exhaustion of internal remedies. In order to determine whether or not there was a conspiracy to bring about a wrongful suspension or expulsion, the court would have to determine whether the suspension and expulsion were brought about in bad faith. This is exactly the issue which, under the doctrine of exhaustion of internal remedies, the court is not to attempt to try until the appellate bodies within the union have been called upon to decide the matter. In many if not most of the cases where one could claim that disciplinary action was imposed in bad faith, he could as well claim that two or more members conspired to bring it about for an improper purpose. Proof of one claim would ordinarily establish the second as well. There is no reason why the use of appropriate conspiracy language should defeat the rule calling for previous exhaustion of internal remedies.

Let us assume that plaintiff may ultimately be able to prove his claim of wrongful expulsion. If, in the meantime, an appellate body within the union has recognized his claims and reinstated him, his recovery in the court action, if

brought, will be limited to those damages arising prior to reinstatement. If the appellate body has denied relief and the court later finds the expulsion wrongful, there will be sounder justification for imposing the full liability on the union treasury than if the union had not been called upon through its constitutional channels to rectify the injustice.

2. *Plaintiff's duty to plead exhaustion of remedies.* Plaintiff concedes that in fact he did not exhaust the remedies available. Perhaps this concession would be a sufficient basis for affirming the order sustaining the demurrer in the instant case, since the order permitted plaintiff to amend and thus to plead, if he can, facts which would excuse him from exhausting internal remedies.

We do not, however, rest our decision upon the concession, but have considered whether in any similar case a plaintiff must allege that he has exhausted his remedy within the union or allege facts bringing his case within an exception to the rule in order to state a cause of action.

If a plaintiff be required to plead either that he has exhausted his remedy or facts which excuse him from so doing, the defendant will then make such denials or plead such new matter as may indicate its position upon this issue. The position of each party will then appear in the pleadings. If, however, plaintiff be not required to plead this matter, it would first appear in the answer. Plaintiff's position would not be disclosed in the pleadings. Since the issue of exhaustion of remedy is in a sense preliminary to the issues on the merits of the expulsion, we think it more orderly that the plaintiff be required to plead the matter in the first instance so that the pleadings will disclose the positions of both parties. The supreme courts of Michigan [11] and Pennsylvania [12]

[11] *Knox v. Local 900, United Automobile, Aircraft, Etc.* (1960), 361 Mich. 257, 104 N. W. (2d) 743, 745.

[12] *Falsetti v. Local Union No. 2026, United Mine Workers* (1960), 400 Pa. 145, 161 Atl. (2d) 882, 892; *Wax v. International Mailers Union* (1960), 400 Pa. 173, 161 Atl. (2d) 603.

have held that plaintiff must plead this matter. The demurrer was properly sustained.

The period of twenty days in which plaintiff may amend his complaint should now run from the filing of our remittitur.

*By the Court.*—Order affirmed, except that the time allowed plaintiff in which to amend will run from the filing of remittitur in circuit court.