## Mamula, Appellant, *v.* United Steelworkers of America.

Argued January 16, 1964. Before BELL, C. J., MUS-
MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS,
JJ.

*Harry Alan Sherman,* for appellant.

*James Craig Kuhn, Jr.,* with him *Arnold D. Wilner,
Ernest G. Nassar,* and *Wilner, Wilner and Kuhn,* and
*Michael H. Gottesman,* and *Feller, Bredhoff & Anker,*
of the Washington, D. C. Bar, for appellees.

OPINION BY MR. JUSTICE COHEN, March 17, 1964:

This is an appeal from the decree entered below
dismissing appellant's amended complaint for failure
to exhaust internal union remedies. Appellees are the
United Steelworkers of America (International Un-
ion), Local 1211 of the United Steelworkers of America
(Local Union), and various officers of Local Union.

It appears from the amended complaint that appel-
lant formerly held the office of president in Local Un-
ion. In 1961, charges of misconduct were brought
against him and after a hearing by a trial committee
of Local Union, these charges were sustained and it
was recommended that appellant be removed from of-
fice, fined $2,000, and be suspended from union mem-
bership until the fine was paid. When these recom-

mendations were approved by the membership of Local Union, appellant appealed to the Executive Board of the International Union in accordance with the procedure prescribed in the International Constitution.

The Executive Board on January 20, 1962, reversed appellant's suspension from union membership and remitted the $2,000 fine, but affirmed appellant's removal from office. In addition, the board stated that appellant should not be eligible to hold office for five years nor until he repaid $1,081.99, the amount of expense allegedly caused by his misconduct. Once this amount was tendered, however, the Board left open the possibility of decreasing the period of disqualification from office. Although the International Constitution permitted a final appeal to the International Convention of the Union which was scheduled to convene in September, 1962, appellant did not invoke this internal procedure but instead instituted the present suit complaining solely of his ineligibility to hold union office.[1] We hold that the court below correctly dismissed this action for failure of appellant to exhaust his internal union remedies.

In *Falsetti v. Local Union No. 2026, United Mine Workers of America*, 400 Pa. 145, 161 A. 2d 882 (1960), we examined at length the basis and rationale for the general rule that a member of an unincorporated association must first exhaust his available internal remedies before seeking judicial relief. We concluded that such a rule not only benefits the association by promot-

---

[1] In prior litigation, appellant unsuccessfully attempted to challenge his removal from office and the election subsequently held in June, 1962, to fill this vacancy. See *Mamula v. United Steelworkers of America*, 409 Pa. 175, 185 A. 2d 595 (1962) and *Mamula v. United Steelworkers of America*, 304 F. 2d 108 (3d Cir. 1962), cert. denied, 371 U.S. 823 (1962). Although his amended complaint is not clear on the point, appellant states in his brief that the present action is concerned solely with his ineligibility to hold union office.

ing autonomy and internal democracy, but also aids the judicial process by settling grievances internally and, where not settled internally, by supplying our courts with the considered judgment of the association tribunals. At the same time, we sought in *Falsetti* to protect the rights of the grievant member by establishing certain limited exceptions to the exhaustion rule where, for example, the available remedies are illusory or resort to them would be futile or unreasonably burdensome. The experience since *Falsetti* has not indicated any necessity for reexamining the general principles therein set forth.

In attempting to justify his failure to appeal to the International Convention, appellant makes two contentions: (1) the general exhaustion rule is inapplicable because appeal to the Convention would have been futile and unreasonably burdensome; and (2) even if the rule is applicable, it has been modified by §101(a) (4) of the Landrum-Griffin Act.

With regard to the first contention, appellant's complaint alleges that the disciplinary action of Local Union was directed by the international officers who are biased against him and thus further appeal would have been "illusory, futile and vain and would only afford said international union defendant opportunity for further delaying plaintiff's rights and remedies." We held in *Falsetti* that the grievant member must set forth facts in his complaint to support the allegation that there exists an exception to the exhaustion rule. See also *Wax v. Internationl Mailers Union*, 400 Pa. 173, 161 A. 2d 603 (1960). Not only has appellant failed to do this, but the admitted facts belie his contention that the bias of the international officers made an appeal to the International Convention futile.

In the first place, we have seen that appellant's appeal to the Executive Board of the International Union resulted in a reversal of his suspension from union

membership and a remittance of the $2,000 fine. This fact casts considerable doubt on appellant's assertion that the internal appellate tribunals were prejudged against him. Secondly, it appears that the international officers constituted a very small percentage of the membership at the International Convention.[2] Hence even if the international officers were biased against appellant, it does not necessarily follow that the Convention would have denied him a fair hearing. See *Kopke v. Ranney*, 16 Wis. 2d 369, 114 N.W. 2d 485, 488 (1962).

Appellant argues that the exhaustion rule is also inapplicable because it would have been unreasonably burdensome for him to appeal to the International Convention in view of the eight-month delay between the decision of the Executive Board (January, 1962) and the meeting of the Convention (September, 1962). As we indicated in *Falsetti*, a grievant member need not as a general matter appeal to an International Convention which does not convene for several years. However, a two or three-step appellate procedure is not per se unduly burdensome, nor is it possible to set forth for all situations a time limit beyond which exhaustion of internal remedies will not be demanded. Rather, an examination must be made of the special factors in each case, especially the possible prejudice caused to the grievant member from the delay in internal appellate procedures.

Applying this test to the instant case, we find that here the eight-month time period was not unreasonably burdensome. It must be remembered that the Executive Board reinstated appellant to union membership and hence there was no loss of possible employment opportunities during this period. With regard to ap-

---

[2] Of the nearly 3000 delegates at the International Convention, only 33 were international officers.

pellant's ineligibility to hold union office, it appears that another election did not take place until sometime in 1963,[3] well after the meeting of the International Convention. Thus no apparent harm would have resulted to appellant from insistence on an appeal to the International Convention.[4] Particularly is this so since the right appellant seeks to protect is his right to be a candidate for office—a right *not* protected by the "Bill of Rights of Members of Labor Organizations", 29 U.S.C. §§411-415. We conclude, therefore, that none of the exceptions set forth in *Falsetti* are here applicable.

Our determination here does not mean we fail to recognize that in many instances an appeal to the International Convention is so illusory that it would be futile and unreasonably burdensome to require resort to Convention action prior to instituting suit. In fact, the whole appellate procedure of some unions is subject to the indictment of being illusory. Indeed, some new internal facility is required in some union discipline procedure—such as a public review board—which would have final jurisdiction to hear appeals from the decisions of the union. Such a board would be extremely helpful to unions, their members and the courts, and would dissipate the overtones of bias that permeates some union disciplinary action. See 73 Yale L.J. 472 (1964). Full protection of a member's individual rights of any nature is important to the concept of union democracy. Union officials should not be permitted to discipline so as to silence criticism, punish complainers and discourage reform. See *Salzhandler v. Caputo*, 316 F. 2d 445 (1963).

---

[3] Appellant unsuccessfully attempted to challenge the election held in June, 1962. See supra note 1.

[4] It is interesting to observe in this connection that appellant's amended complaint was not filed until January, 1963, again after the date of the International Convention.

Appellant next contends that our exhaustion rule has been modified by §101(a)(4) of the Landrum-Griffin Act. That section provides as follows: "Protection of the right to sue. —No labor organization shall limit the right of any member thereof to institute an action in any court, or in a proceeding before any administrative agency, . . . or the right of any member of a labor organization to appear as a witness in any judicial, administrative, or legislative proceeding, or to petition any legislature or to communicate with any legislator: *Provided, That any such member may be required to exhaust reasonable hearing procedures (but not to exceed a four-month lapse of time) within such organization, before instituting legal or administrative proceedings against such organizations or any officer thereof. . . ."*[5] (Emphasis supplied).

Appellant argues that the proviso clause means that courts, both state and federal, may not compel a grievant member to invoke an internal remedy which will consume more than four months. Since the appeal to the International Convention involved an eight-month delay, appellant asserts that he was not required to exhaust this remedy. We do not agree.

We read §101(a)(4) as a limitation upon labor organizations and not upon the judiciary. Prior to the passage of the Landrum-Griffin Act, many unions had provisions in their constitutions stating that any member who brought suit against the union without first exhausting all available internal remedies—no matter how burdensome or time-consuming—was subject to expulsion from membership.[6] Congress' purpose in enacting §101(a)(4) was to invalidate such

---

[5] 29 U.S.C. §411(a)(4).

[6] See Cox, Internal Affairs of Labor Unions Under the Labor Reform Act of 1959, 58 Mich. L. Rev. 819, 839 (1960).

provisions,[7] thereby protecting the union member from discipline for violation thereof, where insistence on exhaustion of remedies would be either (1) unreasonable or (2) exceed a four-month time period. Congress did not intend to alter state rules relating to exhaustion of remedies which, as we have seen, are designed to aid the courts as well as the unincorporated association. Thus while appellant could not be disciplined for bringing suit before appealing to the International Convention, the failure to exhaust this internal remedy still precludes resort to our courts.

An examination of the language of §101(a)(4) plainly supports this interpretation. In the first place, the section states that "[n]o labor organization" shall limit the right of any member to institute suit or to take other remedial steps. There is no reference to existing judicial limitations on the ability of members of unincorporated associations to maintain actions against the association. In this connection it should be remembered that the Landrum-Griffin Act was designed to promote union democracy by protecting the rights of a union member vis-a-vis his union. In fact, Title I, of which §101(a)(4) is a part, is labeled the "Bill of Rights of Members of Labor Organizations" and sets forth various restrictions upon labor organizations.

Secondly, the language relied upon by appellant appears in a parenthetical clause contained in a proviso to the restrictions imposed upon labor organizations. It is highly unlikely that Congress would attempt in such a cavalier manner to alter established state court rules relating to exhaustion of internal remedies.[8]

---

[7] Section 101(b) of the Act states that "[a]ny provision of the constitution and by-laws of any labor organization which is inconsistent with the provisions of this section shall be of no force or effect." 29 U.S.C. §411(b).

[8] See Cox, supra, note 6 at 839-41; Hickey, The Bill of Rights of Union Members, 48 Geo. L.J. 226, 254 (1959); Smith, The Labor-

Appellant cites two federal cases and some language contained in *Falsetti* in support of his interpretation of §101(a)(4). The federal cases[9] involved suits brought in federal court under §102 of the Landrum-Griffin Act[10] to remedy alleged violations of Title I of the Act. We read those decisions as merely adopting for the federal courts an exhaustion of remedies rule patterned upon the proviso clause in §101(a)(4). Those cases do not mean that state courts must also adopt this exhaustion rule.

Appellant also misconstrues our language in *Falsetti*. In the course of discussing generally the exhaustion of remedies doctrine, we mentioned in that case the recent enactment of §101(a)(4) of the Landrum-Griffin Act.[11] Since the impact of the Act upon our own exhaustion rule was not involved in the decision in *Falsetti,* we certainly did not intend to decide this important question at that time. Indeed, our brief discussion of §101(a)(4) is expressly confined to situations "to which the Act is applicable." In our decision today, we hold that §101(a)(4) does not alter the Pennsylvania exhaustion of remedies rule.

Since appellant has not shown any legal justification for his failure to exhaust internal union remedies, we conclude that the decree entered below must be affirmed.

Decree affirmed.

Mr. Justice JONES dissents.

---

Management Reporting and Disclosure Act of 1959, 46 Va. L. Rev. 195 (1960).

[9] Appellant cites *Harris v. International Longshoremen's Association, Local No. 1291,* 321 F. 2d 801 (3d Cir. 1963) and *Detroy v. American Guild of Variety Artists,* 286 F. 2d 75 (2d Cir. 1961).

[10] Section 102 provides that suits for violations of Title I may be brought in a federal district court. 29 U.S.C. §412.

[11] The language in *Falsetti* relied upon by appellant appears at 400 Pa. 145, 160.

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

Even a highly imaginative fiction writer would have considerable difficulty conceiving a procedure more futile, frustrating and meaningless than having an individual member appear before an International Convention, consisting of approximately 3,000 delegates, to present and argue his grievances against the leadership of the union, with the expectation of moving that body to hear, understand and decide the controversy on the merits. Such exposure to the convention arena is not a reasonable pursuit of a remedy; rather, it is a compelled involvement in a vast and undefined contest. The convention is not a tribunal conducive to the fair and impartial determination of a controversy. The customary protections, rights and rules usually associated with the hearing and decisional process are totally absent. I see no reason why the litigant here should be required to travel such a hazardous and unproductive road. In no other instance is one seeking justice required to engage in such futility.

Surely, ordinary experience indicates that were a member to seek to avail himself of this doubtful opportunity to appear before such a massive forum to plead his cause, he would be engaging in a rather empty, burdensome and worthless exercise. To regard such a venture as anything but illusory is to ignore reality. No decision of this Court or any other authority requires such a result. This record does not sustain the majority's conclusion that appellant failed to exhaust his internal union remedies.

I am also unable to share the majority's interpretation of §101(a)(4) of the Landrum-Griffin Act and the majority's failure to apply it to this litigation. This section obviously does not alter the established substantive rule of this Commonwealth which requires exhaustion of internal union remedies. It does, however, make it unmistakably clear that "no labor organ-

ization" may delay the availability of such internal remedies for more than four months.

If appeal to the International Convention be regarded as a "remedy", as the majority holds, then clearly its availability fails to comply with the statute, since that hearing procedure was postponed more than four months.[1]

I conclude, therefore, that appellant may not be denied relief in our courts. He has effectively exhausted all meaningful internal union remedies. Moreover, even if appeal to the International Convention be considered more than an empty gesture, as the majority holds, the Landrum-Griffin Act requires that such appeal be available within four months of the conclusion of the prior step in the appeal process.

I dissent.

Mr. Chief Justice BELL joins in this dissenting opinion.

---

[1] The Executive Board acted on January 20, 1962, and the International Convention was not scheduled to convene until the following September.