[Civ. No. 48668. Second Dist., Div. Three. Sept. 13, 1977.]

MOE MORTON, Plaintiff and Appellant, v.
HOLLYWOOD PARK, INC., et al., Defendants and Respondents.

## COUNSEL

Covey & Covey, Sylvan Covey and Robert R. Lee for Plaintiff and Appellant.

Iverson, Yoakum, Papiano & Hatch, Neil Papiano and John A. Slezak for Defendants and Respondents.

## OPINION

**ALLPORT, J.**—Plaintiff appeals from a judgment dismissing his action for injunctive relief (reinstatement to track privileges)[1] and damages[2] against Hollywood Park Race Track. The judgment of dismissal is predicated solely upon a finding by the trial court that plaintiff failed to exhaust his available administrative remedies before filing his action at law.

In order to understand the contentions on appeal it is necessary to explain briefly the laws under which horse racing is conducted in this state. Since 1933 article IV of the California Constitution, section 25a and, since its repeal in 1966, section 19, subdivision (b) have authorized the Legislature to "provide for the regulation of horse races and horse race meetings and wagering on the results." Pursuant thereto the so-called "Horse Racing Law" (Bus. & Prof. Code, div. 8, ch. 4, § 19400 et seq.) was enacted and amended from time to time thereafter for the purpose of implementing this constitutional mandate.[3]

---

[1]The granting or denial of injunctive relief follows from a determination as to plaintiff's status upon the track premises at the time in question. While the complaint does not contain a prayer for injunctive relief as such, in view of the allegations in paragraph XIV and in an order to show cause filed in conjunction with the complaint, such relief was in fact sought and might have been given under the general prayer for "such other relief as may be deemed just."

[2]Damages are sought for defamation, false imprisonment, battery and intentional interference with emotional tranquility.

[3]Hereafter all section references are to the Business and Professions Code unless otherwise noted.

Section 19420 vests jurisdiction and supervision of horse racing in the California Horse Racing Board. Section 19440 provides generally that this board shall have "all powers necessary and proper to enable it to carry out fully and effectually" the subject law. More specifically section 19562 authorizes the board to prescribe "rules, regulations and conditions . . . under which all horse races with wagering on their results shall be conducted in this state." With respect to regulation of attendance, section 19572 provides: "The board may, by rule, provide for the exclusion or ejection from any inclosure where horseraces are authorized, or from specified portions of such inclosure, of any known bookmaker, known tout, person who has been convicted of a violation of any provision of this chapter or of any law prohibiting bookmaking or any other illegal form of wagering on horseraces, or any other person whose presence in the inclosure would, in the opinion of the board, be inimical to the interests of the state or of legitimate horseracing, or both. No such rule shall provide for the exclusion or ejection of any person on the ground of race, color, creed, national origin or ancestry, or sex." Finally section 19573 provides for an administrative hearing after exclusion and judicial review, as follows:

"Any person who, pursuant to a rule of the board, is excluded or ejected from any inclosure where horse racing is authorized may apply to the board for a hearing on the question of whether the rule is applicable to him.

"The board shall hold the hearing either at its next regular meeting after receipt of the application at the office of the board nearest the residence of the applicant or at such other place and time as the board and the applicant may agree upon.

"If, upon the hearing, the board determines that the rule does not or should not apply to the applicant, it shall notify all persons licensed under Article 4 of this chapter of such determination.

"If the board determines that the exclusion or ejection was proper, it shall make and enter in its minutes an order to that effect. Such order shall be subject to review by any court of competent jurisdiction in accordance with law."

It appears without conflict that on April 10, 1974, plaintiff was "escorted out of the race track premises" with an explanation that he was "undesirable at Hollywood Park." The "Report of Removal," filed with

the board by the association,[4] referred to board rules 1980 and 1990 as those forming the basis for the action taken.[5] Apparently recognizing that he was entitled to a hearing before the board on the question of whether these rules were applicable to him, plaintiff filed an application for such a hearing.

After failing to obtain evidence from the association to support a conclusion that plaintiff was actually excluded under rule 1980, the office of the Attorney General advised the association and Morton as follows:

"Gentlemen:

"After discussing the matter of the ejection of Mr. Morton from Hollywood Turf Club with your attorney, Mr. Neil Papiano, it appears that no grounds for ejection exist under Rule 1980 and, accordingly, the Board has no jurisdiction to grant a hearing under the rules of the California Horse Racing Board.

"It therefore appears that said removal is pursuant solely to Rule 1990 and is, accordingly, a private matter between Hollywood Turf Club and Mr. Morton.

"I am sending a copy of this letter to Mr. Sylvan Covey, informing him that Mr. Morton has no right to an administrative hearing in this matter.

"Very truly yours,

"MARILYN M. MOFFETT
Deputy Attorney General

"MMM:ags

"cc: Neil Papiano, Esq.
 Sylvan Covey, Esq. [attorney for plaintiff]
 John Newman, Chairman, CHRB

---

[4]Section 19403 defines "association" as any person engaged in the conduct of a recognized horse race meeting. Board rule 1982 provides for the filing of such a report with the board.

[5]Rule 1980 provides for the exclusion of persons engaged in bookmaking, etc. Rule 1990 provides for exclusion of "any person . . . for any reason the association deems appropriate. . . ."

Charles L. Harman, Secty., CHRB
Leonard Foote, Chief Inv., CHRB "

Within a week of receiving this advice, plaintiff chose, without further pursuing the matter of an administrative hearing, to file the instant action.

At time of trial the parties elected first to proceed on the second and separate defense contained in the answer, to wit: "The Court has no jurisdiction of the subject of any of the causes of action alleged in the complaint in that plaintiff has failed to exhaust the administrative and judicial remedies provided to and required of him. . . ." At that time the trial court properly perceived the issue when it observed "[w]e are here to determine whether or not the administrative remedy was exhausted, by the plaintiff, prior to bringing his lawsuit." For reasons that follow we must conclude that the court below was correct when it ruled at the conclusion of the trial of this issue that plaintiff had not exhausted his administrative remedies and in dismissing the action insofar as it sought injunctive relief, but was incorrect in dismissing the causes for damages.

In *Flores* v. *Los Angeles Turf Club,* 55 Cal.2d 736 [13 Cal.Rptr. 201, 361 P.2d 921], following his ejection and exclusion from the track, Flores filed an action for an injunction and damages. The trial court dismissed the cause for injunctive relief for failure to exhaust administrative remedies. In affirming the judgment the Supreme Court first upheld the constitutionality of the horse racing law in general and, after outlining the comprehensive nature of the regulatory system described herein, *supra,* concluded at pages 746-747:

"In the face of so pervasive a system of administrative procedure, it would appear difficult to maintain that the Legislature did not intend that this system provide the *exclusive initial recourse* for persons aggrieved by the operation of its regulatory legislation. And, in similar instances, the courts have withheld judicial relief from those who have not first availed themselves of the administrative remedies provided. (*United States* v. *Superior Court,* 19 Cal.2d 189, 194 [120 P.2d 26]; *Abelleira* v. *District Court of Appeal,* 17 Cal.2d 280, 291-293 [109 P.2d 942, 132 A.L.R. 715]; *Cardoso* v. *Department of Alcoholic Beverage Control,* 162 Cal.App.2d 277, 278 [327 P.2d 591]; *Fiscus* v. *Department of Alcoholic Beverage Control,* 155 Cal.App.2d 234, 236 [317 P.2d 993]; *Louis Eckert Brewing Co.* v. *Unemployment Reserves Com.,* 47 Cal.App.2d 844, 848 [119 P.2d 227].)

"[T]he provision in section 19561.5 for judicial review of board determinations would appear *a fortiori* to make exhaustion of the statutory remedy prerequisite to judicial action, at least with respect to relief against future acts [injunctive relief]." (Italics added.)

In the instant case the board attorney's determination that the board lacked jurisdiction to hold a hearing resulted in no administrative disposition being made of the initial question of plaintiff's right to be on the premises. By acquiescing in that attorney's advice, without proceeding further to compel a hearing on that issue, plaintiff failed to exhaust his administrative remedy with respect thereto. Code of Civil Procedure section 1085 anticipates an arbitrary or illegal refusal of a duly constituted board to hold a hearing. The section authorizes resort to the writ of mandate "to compel the performance of an act which the law specifically enjoins. . . ." It follows that, although plaintiff invoked his remedy, he did not exhaust it by resorting to the writ procedure to compel a hearing before filing this action. While it is arguable that the format of the board rules itself does not specifically authorize a hearing on the applicability of rule 1990, the statutory scheme outlined above is not so limited. Under section 19572, *supra,* the board may, by rule, provide for exclusion or ejection of persons coming under rule 1980 and also of "any other person whose presence in the inclosure would, in the opinion of the board, be inimical to the interests of the state or of legitimate horseracing, or both." Rule 1990 embraces this latter classification of persons. Section 19573 provides for a hearing on the question of the applicability of "a" rule to any person excluded or ejected. The jurisdiction of the board is therefore not limited to exclusions under rule 1980.[6] Thus, if one wishes to seek injunctive relief, he must challenge the propriety of his removal and exclusion from the premises by exhausting the administrative remedies available to him in order to first determine his status on the premises. This, in our opinion, includes judicial review by way of writ of mandate of the propriety of the board's refusal to grant a hearing. Under the circumstances the trial court's action in dismissing the cause for injunctive relief must be affirmed.

The question remains, however, as to the propriety of dismissing the causes of action for damages. We believe the answer is also found in *Flores, supra.* In *Flores,* contrary to the procedure in the case at bench, the trial court had retained jurisdiction of the cause of action for damages and, after trial on the merits, determined that issue in favor of

[6]See also article 41 of title 4 of the California Administrative Code (§§ 2000-2011; now art. 20, §§ 2000-2012) and *Greenberg* v. *Hollywood Turf Club,* 7 Cal.App.3d 968, 979-980 [86 Cal.Rptr. 885].

defendant. In so doing it was found that, upon Flores' refusal to leave the premises, he became a trespasser and that defendants used no more force than necessary in ejecting him with the result that he failed to prove his cause for damages. In elaborating on this phase of the case the court said: "Appellant's argument that if the administrative remedy is exclusive, it is incomplete and inadequate, is based on the misconceived notions (1) that it precludes recovery of the damages allowed by former Civil Code, sections 52 and 54, and . . . . However, the trial court did not purport to deny appellant damages against respondents because the administrative remedy precluded such a recovery; its determination in this respect was based on findings that respondents were privileged (or indeed, obligated) to ask appellant to leave, and that when he refused, he became a trespasser upon whose person respondents were privileged to, and did, exercise reasonable force to accomplish his ejection. These determinations did not rest on the theory of exclusiveness of remedy, but were judicial findings based upon the merits of appellant's case. The dismissal for lack of jurisdiction applied only to appellant's injunctive cause of action." (Pp. 747-748.)

While in *Flores* the dismissal for lack of jurisdiction was applied only to the injunctive relief cause of action, by affirming the entire judgment it appears that the Supreme Court, impliedly at least, deemed the exhaustion of administrative remedies to be a prerequisite to the determination of the party's status at the track for purposes of a cause of action for damages. Be that as it may, we consider the reasoning and holding of the same court in *Westlake Community Hosp.* v. *Superior Court,* 17 Cal.3d 465 [131 Cal.Rptr. 90, 551 P.2d 410], decisive of the issue. In *Westlake* it was said at pages 474-477:

"We turn initially to the defendants' contention that plaintiff may not seek recovery for damages resulting from her exclusion from Los Robles because she failed to exhaust the available internal administrative remedies afforded by the hospital. . . .

"Although plaintiff acknowledges that the exhaustion of remedies doctrine has frequently been applied in matters relating to the actions of private associations, she contends that the doctrine is only applicable when an individual seeks reinstatement or admission to an organization and should not be applied to bar her tort action for damages. While early decisions in other jurisdictions frequently declined to apply the exhaustion doctrine to damage actions on the grounds that a private organization's internal review procedures generally did not provide a damage

remedy (see, e.g., *Brotherhood of Railroad Trainmen* v. *Barnhill* (1926) 214 Ala. 565 [108 So. 456, 462]; *Bauer* v. *Samson Lodge, K.P.* (1885) 102 Ind. 262 [1 N.E. 571, 575-576]), contemporary out-of-state authorities have generally rejected this analysis and have refused to recognize an exception to the exhaustion requirement in the case of damage actions. (See, e.g., *Kopke* v. *Ranney* (1962) 16 Wis.2d 369 [114 N.W.2d 485, 487-489]; *Falsetti* v. *Local Union etc.* (1960) 400 Pa. 145 [161 A.2d 882, 890].)

"Although no prior California case has explicitly analyzed this issue, our court in *Holderby* v. *Internat. Union etc. Engrs.*, *supra*, 45 Cal.2d 843, implicitly endorsed the position adopted by the more recent out-of-state cases by dismissing, for failure to exhaust internal remedies, an action which sought both reinstatement *and damages*. (See also *Simpson* v. *The Salvation Army* (1942) 49 Cal.App.2d 371 [121 P.2d 847]; cf. *Benson* v. *Screwman's Ben. Ass'n* (1893) 2 Tex.Civ.App. 66 [21 S.W. 562].) The *Holderby* majority reached this result in the face of the dissenting opinion's explicit argument that, at a minimum, the exhaustion doctrine should not constitute a bar to the plaintiff's damage claim. (See 45 Cal.2d at pp. 850-851 (Carter, J. dissenting).)

"Plaintiff accurately notes that in the instant case, unlike *Holderby*, she seeks only damages, not reinstatement and damages. Nevertheless, the policy considerations which support the imposition of a general exhaustion requirement remain compelling in this context. In the first place, even if a plaintiff no longer wishes to be either reinstated or admitted to the organization, an exhaustion of remedies requirement serves the salutary function of eliminating or mitigating damages. If an organization is given the opportunity quickly to determine through the operation of its internal procedures that it has committed error, it may be able to minimize, and sometimes eliminate, any monetary injury to the plaintiff by immediately reversing its initial decision and affording the aggrieved party all membership rights; an individual should not be permitted to increase damages by foregoing available internal remedies. (See Summers, *Legal Limitations on Union Discipline* (1951) 64 Harv.L.Rev. 1049, 1089.).

"Moreover, by insisting upon exhaustion even in these circumstances, courts accord recognition to the 'expertise' of the organization's quasi-judicial tribunal, permitting it to adjudicate the merits of the plaintiff's claim in the first instance. (See *id.*) Finally, even if the absence of an internal damage remedy makes ultimate resort to the courts

inevitable (see *Developments in the Law-Private Associations* (1963) 76 Harv.L.Rev. 983, 1075), the prior administrative proceeding will still promote judicial efficiency by unearthing the relevant evidence and by providing a record which the court may review. Accordingly, we conclude that the exhaustion of remedies doctrine fully applies to actions seeking damages for an allegedly wrongful termination of or exclusion from membership in a private association. (See *Kopke* v. *Ranney, supra,* 16 Wis.2d 369 [114 N.W.2d 485].)" (Fns. omitted.)

■ In applying the rationale and legal principles of *Flores* and *Westlake, supra,* we conclude that, by failing to exhaust his administrative remedies and preliminarily determining that board rules 1980 or 1990 were inapplicable to him, plaintiff must be deemed a trespasser for purposes of his cause of action for damages. Upon becoming a trespasser defendants were privileged to remove him from the premises. The facts pertaining to the actual removal and exclusion have not as yet been litigated and will, of course, determine whether or not the association violated any duty it owed to Morton as a trespasser giving rise to damages on any of the theories of recovery set forth in footnote 2, *ante.*

Although the briefs on appeal suggest that this court should determine the validity and applicability of rule 1990, we decline to do so. As pointed out herein, those questions were required to be resolved at an administrative hearing. In so holding we emphasize that the only issue below was whether or not plaintiff had exhausted his administrative remedies. The validity and application of the board rules were not litigated in the trial court and therefore those issues are not before us on appeal. Because of Morton's failure to exhaust his administrative remedies, it must be presumed that the association's decision to remove and exclude plaintiff under its rules was proper.

The judgment is affirmed insofar as it disposes of all causes of action for injunctive relief. In all other respects it is reversed without costs to any party and remanded for further proceedings not inconsistent with the views expressed herein.

Ford, P. J., and Potter, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied November 10, 1977.