**Khaled A. QASEM, Plaintiff-Appellee,**

v.

**C.E. KOZAREK, Defendant-Appellant.**

**No. 82-3049.**

United States Court of Appeals, Seventh Circuit.

Argued June 8, 1983.

Decided Sept. 13, 1983.

Richard G. Tarlow, Rappaport & Tarlow, Encino, Cal., for defendant-appellant.

James A. Olson, Lawton & Cates, Madison, Wis., for plaintiff-appellee.

Before PELL and FLAUM, Circuit Judges, and GRANT, Senior District Judge.*

FLAUM, Circuit Judge.

This case arises out of the denial of certain medical and surgical privileges at Tomah Memorial Hospital, Inc. (the "Hospital") to plaintiff Khaled A. Qasem ("Qasem") and requires us to consider the extent to which Wisconsin law protects a medical doctor participating in a review of his peers from civil liability as a result of actions taken during the review process. For the reasons set forth below, this case is remanded to the trial court for a new trial consistent with this opinion.

I. *The Facts*

Qasem is a doctor who has been on the medical staff of the Hospital since 1975. On June 25, 1977, the Hospital's credentials committee (the "Credentials Committee") comprised of defendant C.E. Kozarek ("Kozarek"), James Mubarak and Gustave Landmann recommended that Qasem not be permitted to perform cholecystectomies, abdominal hysterectomies, vaginal hysterectomies and caesarean section surgical procedures at the Hospital. On July 22, 1977, the recommendation of the Credentials Committee was presented to the Hospital's medical staff (the "Staff") which adopted it. This recommendation was subsequently adopted by the Board of Directors of the Hospital.

Qasem had the right to appeal the decision of the Staff pursuant to procedures established by the Joint Commission on Accreditation of Hospitals and the Hospital's bylaws. These procedures included a right to be represented by counsel of Qasem's

* The Honorable Robert A. Grant, Senior District Judge of the United States District Court for the Northern District of Indiana, is sitting by designation.

own choice and to present expert medical testimony. Qasem did not appeal the decision of the Staff pursuant to these procedures.

On or about April 28, 1981, Qasem filed this lawsuit in which he alleges that Kozarek tortiously interfered with his contract with the Hospital and that Kozarek induced potential or prospective patients of Qasem to seek medical care elsewhere. A bifurcated trial was held before a six-person jury. The jury found that Kozarek intentionally and improperly interfered with Qasem's privileges to perform surgery at the Hospital and awarded him the sum of $32,000.00 in compensatory damages.

II. *The Trial Court Did Not Abuse Its Discretion By Failing to Require Exhaustion As Prerequisite to Judicial Review*

■ Kozarek contends that, as a matter of law, Qasem's failure to exhaust his administrative remedies precludes him from bringing this lawsuit. We do not agree.

■ While it is true that under the doctrine of exhaustion an individual is not entitled to judicial relief unless he has exhausted his administrative remedies, this doctrine is subject to numerous exceptions. *McKart v. United States,* 395 U.S. 185, 193, 89 S.Ct. 1657, 1662, 23 L.Ed.2d 194 (1969), *citing, Myers v. Bethlehem Shipping Corp.,* 303 U.S. 41, 50–51, 58 S.Ct. 459, 463–464, 82 L.Ed. 638 (1938). Further, in absence of a statute requiring exhaustion prior to judicial review, as in the case now before the court, whether to require exhaustion is within the discretion of the trial court rath-

er than mandatory. *See Cravatt v. Thomas,* 399 F.Supp. 956, 968 (W.D.Wis.1975).

Based on the record before us, we conclude that the trial court did not abuse its discretion by permitting Qasem to bring this action without first pursuing the internal review process available under the Hospital's bylaws. Although we are cognizant that strong public policy reasons exist for requiring exhaustion when peer review in the medical field is involved,[1] we are persuaded that exhaustion should not be considered mandatory in this case because the only remedy Qasem seeks in this lawsuit is an award of damages against Kozarek. It is Qasem's option not to seek reinstatement and to file instead a claim for monetary damages. Since the Hospital reviewing body is not empowered to award Qasem damages, it would be unnecessary for Qasem to pursue his administrative remedies.

In reaching this conclusion we are not unmindful of the approach taken by the Supreme Court of California in *Westlake* where the court, relying on a Wisconsin case, *Kopke v. Ranney,* 16 Wis.2d 369, 114 N.W.2d 485 (1962) ("*Kopke* "), held that the exhaustion of remedies doctrine applies to actions in which the plaintiff seeks damages for an alleged wrongful termination of or exclusion from membership in a private association. *See* 17 Cal.3d at 476–77, 551 P.2d at 416, 131 Cal.Rptr. at 96. We have reviewed *Kopke* and conclude that it does not require us to take the approach adopted by the court in *Westlake* because *Kopke* is a case involving a labor union in which a provision of the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C. §§ 401–531 (1976 & Supp. 11 1978) (the "Labor-Management Act"), was controlling,[2] and we base our holding in the

1. For a discussion of some of the policy reasons for requiring exhaustion *see Westlake Community Hospital v. Superior Court of Los Angeles County,* 17 Cal.3d 465, 476–77, 551 P.2d 410, 416, 131 Cal.Rptr. 90, 96 (1976) ("*Westlake* ").

2. Section 101(a)(4) of the Labor-Management Act provides:
 No labor organization shall limit the right of any member thereof to institute an action in any court, or in a proceeding before any administrative agency, irrespective of whether or not the labor organization or its officers

are named as defendants or respondents in such action or proceeding, or the right of any member of a labor organization to appear as a witness in any judicial, administrative, or legislative proceeding, or to petition any legislature or to communicate with any legislator: Provided, That *any such member may be required to exhaust reasonable hearing procedures (but not to exceed a four-month lapse of time) within such organization, before instituting legal or administrative proceedings against such organizations or any*

case before us on the narrow ground that the trial court did not abuse its discretion by failing to require Qasem to pursue the Hospital's internal review process before bringing this lawsuit.

### III. *The Peer Review Statute Provides Immunity Absent a Showing of Bad Faith*

Section 146.37 of the *Wisconsin Statutes* (the "Peer Review Statute") provides, in relevant part:

(1) No person acting in good faith who participates in the review or evaluation of the service of health care providers or facilities or the charges for such services conducted in connection with any program organized and operated to help improve the quality of health care, to avoid improper utilization of the services of health care providers or facilities or to determine the reasonable charges for such services, or who participates in the program authorized by contract under s. 146.60, is liable for any civil damages as a result of any act or omission by such person in the course of such review or evaluation.

(2) In determining whether a member of the reviewing or evaluating organization has acted in good faith under sub. (1), the court shall consider whether such member has sought to prevent the health care provider or facility and its counsel from examining the documents and records used in the review or evaluation, from presenting witnesses, establishing pertinent facts and circumstances, questioning or refuting testimony and evidence, confronting and cross-examining adverse witnesses or from receiving a copy of the final report or recommendation of the reviewing organization.

*See* Wis.Stat. § 146.37 (1981–82).

Although the Wisconsin courts have not ruled on the legal effect of the Peer Review Statute, Minnesota has a similar statute which has been examined by the supreme court of that state. With respect to the Minnesota statute, in *Campbell v. St. Mary's Hospital,* 312 Minn. 379, 252 N.W.2d 581 (1977), *reh'g denied,* the Supreme Court of Minnesota stated:

As must be conceded by all parties, plaintiff's remaining causes of action asserted against the individual members of the review boards at St. Mary's Hospital and the Duluth Surgical Board of Recommendations for interference with business relationships, defamation, and conspiracy cannot stand in the absence of legal malice. This is so because of the legislatively granted immunity to members or employees of medical review organizations provided by Minn.St. 145.63, which provides in part:

'No person who is a member or employee of, who acts in an advisory capacity to or who furnishes counsel or services to, a review organization shall be liable for damages or other relief in any action brought by a person or persons whose activities have been or are being scrutinized or reviewed by a review organization, by reason of the performance by him of any duty, function or activity of such review organization, unless the performance of such duty, function or activity was motivated by malice toward the person affected thereby.'

The clear import of this statute is to encourage the medical profession to police its own activities with a minimum of judicial interference. And the wisdom of this legislative policy is obvious. Our ignorance of such multisyllabic terms found in the present record ... is no less than that shared by the general public. Simply stated, courts are ill-equipped to pass judgment on the specialized expertise required of a physician, particularly when such a decision is likely to have a direct impact on human life. *Id.* 252 N.W.2d at 587.

Similarly, Arizona has a medical peer review statute which has been subjected to

---

*officer thereof:* And provided further, That no interested employer or employer association shall directly or indirectly finance, encourage, or participate in, except as a party, any such action, proceeding, appearance, or petition.

*See* 29 U.S.C. § 411(a)(4) (1976) (emphasis added).

judicial review. In *Scappatura v. Baptist Hospital of Phoenix,* 120 Ariz. 204, 584 P.2d 1195 (App.Ct.1978), *reh'g denied,* the Arizona appellate court stated:

Under A.R.S. § 36–445.02 any legal action against appellees is precluded unless appellant makes a showing of malice or bad faith by them in their review and suspension of him. The purpose and effect of this statute, within which malice and bad faith must be interpreted, are the encouragement of hospital peer review. The goal is the promotion of better patient care, and this statute is directed toward doing so by the exercise of peer review.

Review by one's peers within a hospital is not only time-consuming, unpaid work, it is also likely to generate bad feelings and result in unpopularity. If lawsuits by unhappy reviewees can easily follow any decision, even a temporary one followed by a due process hearing such as here, then the peer review demanded by A.R.S. § 36–445 will become an empty formality, if undertaken at all. Banning such lawsuits except where there is real evidence of actual malice is an integral portion of our legislature's intent.

120 Ariz. at 209, 584 P.2d at 1201.

■ After considering the language of the Peer Review Statute, we conclude that it should be applied similarly to the manner in which courts have interpreted the peer review statutes in Minnesota and Arizona.[3] We, therefore, hold that the Peer Review Statute protects those who participate in the peer review process in the medical field from any civil liability for actions taken as a result of this process so long as the participant acted in good faith.

IV. *Whether Certain Procedural Rights Were Denied Must Be Considered in Determining the Existence of Good Faith*

The Peer Review Statute states that in determining whether a party participating in the peer review process acted in good faith the court "shall consider" whether he sought to prevent the party being reviewed or his counsel "from examining the documents and records used in the review or evaluation, from presenting witnesses, establishing pertinent facts and circumstances, questioning or refuting testimony and evidence, confronting and cross-examining adverse witnesses or from receiving a copy of the final report or recommendation of the reviewing organization." *See* Wis.Stat. § 146.37(2) (1981–82). While this language clearly requires that these procedural issues be considered in determining the existence of good faith, this language is ambiguous with respect to whether these are the only factors which should be considered.

■ Under Wisconsin law when a statute is ambiguous it is appropriate to look to matters outside the face of the statute to determine the intent of the legislature. *See State v. Stepniewski,* 105 Wis.2d 261, 268, 314 N.W.2d 98, 101 (1982). Where one of several interpretations of a statute is possible, the legislative intent is ascertained from the language of the statute in relation to its context, subject matter, scope, history and the object intended to be accomplished. *Terry v. Mongin Insurance Agency,* 105 Wis.2d 575, 584, 314 N.W.2d 349, 353–54 (1982). Consequently, it is appropriate to look to the legislative history of the Peer Review Statute in determining the factors to consider in deciding if a participant in the medical review process acted in good faith.

■ A review of this legislative history indicates that a version of a medical peer review statute which was passed by the Wisconsin legislature but not signed by the governor of that state would have provided that a party who acted in good faith while participating in a medical peer review proceeding could not be liable for any civil damages as a result of these proceedings so long as certain procedural rights were not denied to the person being reviewed. *See*

---

**3.** Under the peer review statute in Minnesota a party participating in the review process is protected by immunity from civil liability as a result of actions taken during the review process unless he acted with malice and under the peer review statute in Arizona such a person is protected unless he acted either with malice or in bad faith. *See* Minn.Stat. § 145.63 (1981); Ariz.Rev.Stat. § 36–445.02 (1981).

1975 A.B. 56.[4] Nonetheless, the peer review provisions which were signed into law contained different language with regard to when immunity from civil liability exists. See Wis.Stat. § 146.37 (1977–78). In a memorandum prepared by the Legislative Council Staff (the "Council Staff") for the Assembly Committee on the Judiciary of the Wisconsin Legislature dated February 12, 1976, the Council Staff said of the version that was ultimately signed into law that it "restores the procedural protections of A.B. 56 for the health care provider or facility, but instead of making them a condition precedent to civil immunity [for a party acting in good faith], it makes them *a factor to be considered* by the court in determining whether a member of the reviewing organization has acted in good faith." See Wisconsin Legislative Council Staff Memorandum dated February 12, 1976 (emphasis added). We, therefore, hold that under the Peer Review Statute a person participating in a review of his peers can be found to have acted in bad faith even if the procedural rights set forth in the statute were not denied, but whether these procedural rights were denied is a factor which must be considered in determining whether he acted in bad faith.

## V. The Trial Court Misinterpreted the Legal Effect of the Peer Review Statute

### A. The Trial Court Erred in Not Permitting Qasem To Be Cross-Examined About His Failure to Pursue the Hospital's Internal Review Process

That Qasem did not appeal the Hospital's action denying him the right to perform certain surgical procedures at the Hospital pursuant to the internal review procedure established by the Hospital's by-laws is not in dispute and on the first day of the trial the trial court informed the jury that this fact was stipulated to by the parties. Later in the proceedings Kozarek sought to examine Qasem as to whether Qasem had been prevented from exercising his appellate rights but the court sustained Qasem's objection to this line of questioning on the ground that it would be cumulative in light of the stipulated fact that the internal review was not pursued.

■ Having considered the trial court's refusal to permit Kozarek to question Qasem about his failure to seek a review of the Hospital's action in light of the Peer Review Statute, we conclude that this line of questioning would have been relevant to the issue of whether Kozarek acted in good faith. Consequently, we conclude that the trial court erred in sustaining Qasem's objection to Kozarek's question of whether Kozarek sought to prevent Qasem from exercising his appellate rights.

### B. The Trial Court Erred in Instructing the Jury with Regard to the Peer Review Statute

At the conclusion of the trial Kozarek asked that the jury be given the following instruction with regard to the legal effect of the Peer Review Statute:

No person acting in good faith who participates in the review or evaluation

---

4. Assembly Bill 56 contained the following provision:

No person acting in good faith who participates in the review or evaluation of the services of health care providers or facilities or the charges for such services conducted in connection with any program organized and operated to help improve the quality of health care, to avoid proper utilization of the services of health care providers or facilities or to determine the reasonable charges for such services is liable to the health care providers or facilities being reviewed for any civil damages as a result of any act or omission by such person in the course of such review or evaluation if the health care provider or facility or the counsel or representative of such provider or facility during the review or evaluation:

(1) Is permitted an adequate opportunity to:
(a) Examine documents and records which are being used;
(b) Bring witnesses;
(c) Establish all pertinent facts and circumstances; and
(d) Question or refute any testimony or evidence, including opportunity to confront and cross-examine adverse witnesses; and
(2) Is provided with a copy of the final report or recommendation of the reviewing organization upon his request.
See 1975 A.B. 56.

of the services of health care providers is liable for any civil damages as a result of any act or omission by such person in the course of such a review or evaluation. In determining whether the defendant C.E. Kozarek of the Credentials Review Committee of Tomah Memorial Hospital acted in good faith, you should consider whether the defendant sought to prevent the plaintiff from examining documents and records used in the review or evaluation, from presenting witnesses, establishing pertinent facts and circumstances, questioning or refuting testimony and evidence, confronting and cross-examining adverse witnesses or from receiving a copy of the final report or recommendation of the reviewing organization.

■ The trial judge refused to instruct the jury in accordance with Kozarek's request. Instead, the jury was given the following instruction:

*Peer Review.* Under Wisconsin law a member of a Credentials Committee acting in good faith is immune from liability for acts committed or decisions made in his capacity as a member of the committee where, as in this case, statutory procedures were provided. Such immunity applies to a member of the committee when he acts in good faith as a decision maker. Now, the evidence brought before him is similar to the activities of a judge or jury in a trial. For any other actions the defendant is not entitled to this immunity.

*Good Faith.* Good faith is a term that prescribes a general course of conduct. Whether an individual acted in good faith is a question that can only be answered following a careful analysis of the facts in a particular case.

An individual acts in bad faith if his conduct evinces a significant disregard of the interest of another, carries with it a suggestion of dishonesty or is specious fraud.

Good faith has been defined as honesty of intention and honesty in fact in the conduct concerned, and freedom from knowl-

edge of circumstances which ought to be placing the holder upon inquiry.

Transcript. Vol. 4, pp. 234–35. Since we have concluded that the Peer Review Statute requires the court to consider whether the procedural rights of the party being examined were violated in determining whether a person participating in a review of his peers may face civil liability for actions taken as a result of the review proceedings, we conclude that the trial court erred in not instructing the jury to consider those procedural issues.

C. In Its Order Denying Kozarek's Post-Trial Motions the Trial Court Misstated the Legal Effect of the Peer Review Statute

■ After the jury returned a verdict finding Kozarek guilty of intentionally and tortiously interfering with Qasem's contract with the Hospital and inducing potential or prospective patients of Qasem to seek medical care elsewhere, Kozarek moved for judgment notwithstanding the verdict or, in the alternative, for a new trial. In denying these motions the trial court stated "Wis. Stats. 146.37 does not set forth the exclusive means by which the plaintiff may pursue his cause of action for tortious interference with a contract to provide health care services." *See* Order 81–C–261. Based on our review of the Peer Review Statute and Wisconsin law in general, we conclude that the trial court's statement with regard to the legal effect of the Peer Review Statute is incorrect.

Contrary to the statement made by the trial court, the Peer Review Statute is not a "means" by which Qasem can pursue his cause of action. Instead, the means by which this claim can be pursued is precisely the method Qasem used, to file an action based on the common law concept of tortious interference with a contract and tortious interference with a prospective business relationship. What the Peer Review Statute does is to provide a defense which can be invoked to protect those who participate in peer review in the medical field provided they act in good faith.

### VI. *The Trial Court's Failure to Give Proper Jury Instructions with Regard to the Peer Review Statute Constitutes Reversible Error*

 An error in refusing to give a jury instruction, like any other trial error, is subject to Federal Rule of Civil Procedure 61 and should be disregarded if it " 'does not affect the substantial rights of the parties.' " *Alloy International Co. v. Hoover-Nsk Bearing Co.,* 635 F.2d 1222, 1226 (7th Cir.1980), *reh'g denied.* In order to determine if the trial court committed a reversible error by failing to give a proper instruction, the reviewing court must consider whether the jury was sufficiently informed by the instructions that were given and other means of the issues in the case and its duty to decide them. *Id.* Alleged errors in jury instructions are to be considered "in the light, not only of the instructions as a whole, but of the allegations of the complaint, the opening statements, the evidence, and the closing arguments". *Id.* See also *Beard v. Mitchell,* 604 F.2d 485, 497–98 (7th Cir.1979); *Musgrave v. Union Carbide Corp.,* 493 F.2d 224, 231 (7th Cir. 1974). The reviewing court must consider all that the jury heard from the jury's standpoint and decide not whether the instruction was faultless in every respect but rather whether " 'the jury was misled in any way and whether it had understanding of the issues and its duty to determine those issues.' " 635 F.2d at 1226–27, *quoting, Borel v. Fibreboard Paper Products Corp.,* 493 F.2d 1076, 1100 (5th Cir.1973), *cert. denied,* 419 U.S. 869, 95 S.Ct. 127, 42 L.Ed.2d 107 (1974).

 After considering the record as a whole, we conclude that the jury was not properly informed of the procedural elements it should have considered in determining if Kozarek acted in good faith. We believe that the jury being instructed as to these procedural issues was particularly important to the outcome of this case because such an instruction would have emphasized the fact that Qasem failed to take advantage of the internal review process which was available under the Hospital's by-laws.

By giving an instruction that defined good faith in common law terms rather than incorporating the considerations set forth in the Peer Review Statute, the trial court misled the jury with respect to elements which should be considered in determining whether the civil immunity granted to persons participating in peer review in the medical field pursuant to the Peer Review Statute applies.

### VII. *Conclusion*

Based on our interpretation of the Peer Review Statute, we conclude that the trial court erred in not instructing the jury to consider the factors set forth in subsection 2 of the Peer Review Statute in deciding whether Kozarek acted in bad faith. In light of the impact of these errors on the tenor of the entire proceedings and the manner in which the civil immunity issue was presented to the jury, we conclude that these errors were prejudicial to Kozarek's defense. Accordingly, this case is remanded to the trial court for a new trial consistent with this opinion.