[No. B154868. Second Dist., Div. Seven. Apr. 8, 2003.]

PATRICIA M. PALMER, Plaintiff and Appellant, v.
THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, Defendant
and Respondent.

COUNSEL

Herbert Abrams and Lauren Mayo-Abrams for Plaintiff and Appellant.

Atkinson, Andelson, Loya, Ruud & Romo, James C. Romo and Sukhi K. Sandhu for Defendant and Respondent.

OPINION

PERLUSS, P. J.—Plaintiff Patricia M. Palmer sued the Regents of the University of California (the Regents) in a common law action for wrongful termination in violation of public policy without first pursuing University of California grievance procedures expressly created to protect employees like Palmer who claim to be victims of retaliation for reporting improper activities. The trial court granted the Regents' motion for summary judgment based on Palmer's failure to exhaust the internal remedies available to her. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

1. *Palmer's Termination and Her Complaint for Wrongful Discharge*

Palmer was employed for 21 years as a clinical laboratory technologist at the UCLA Medical Center's Department of Pathology and Laboratory Medicine. In January 1997 the department announced a major restructuring.

Palmer and a number of her coworkers were advised they would be laid off effective March 31, 1997, but would be permitted to apply for new positions within the restructured department prior to the layoff date. Palmer was also told "as a regular status employee with more than ten years of seniority, you shall have preference for re-employment for three years from the date of layoff."

A committee established to select employees to whom permanent positions would be offered after the restructuring interviewed Palmer but did not offer her a job because, according to the chair of the committee, "there were other, better qualified applicants for the positions available." However, Palmer was hired as a temporary clinical laboratory technologist in a position that terminated in December 1997. Palmer was told her "knowledge and ability qualify you [for] this position."

Palmer brought this action against the Regents, alleging wrongful discharge in violation of the public policy against retaliation for reporting unlawful activity. In paragraphs 19 and 20 of her complaint she asserts she "repeatedly reported laboratory abuses to defendants [including] failure . . . to comply with state regulations regarding reviewing lab results and failure to comply in signing off those results [and] that data from the lab was being falsified." She alleges she "was wrongfully terminated and not rehired because of her whistleblowing activities as set forth in paragraphs 19 and 20 of this complaint."

## 2. The Regents' First Motion for Summary Judgment

The trial court granted the Regents' initial motion for summary judgment, construing Palmer's complaint as limited to a cause of action for discharge in violation of Labor Code section 1102.5, subdivision (b), which prohibits an employer from retaliating against an employee who reports the violation of a federal or state statue or regulation to "a government or law enforcement agency." The trial court concluded that reports of violations to the employer itself are not protected under Labor Code section 1102.5 and that, in any event, the Regents had presented evidence of a proper basis for Palmer's termination. We reversed in an unpublished opinion (*Palmer v. Regents of the University of California* (Mar. 5, 2001, B138553)), holding that Palmer had stated a "classic" common law cause of action for discharge in violation of public policy under *Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167 [164 Cal.Rptr. 839, 610 P.2d 1330, 9 A.L.R.4th 314], and that triable issues of fact existed as to the reasons for Palmer's discharge.

3. *The Second Summary Judgment Motion: Failure to Exhaust Internal Grievance Procedures*

On remand the Regents again moved for summary judgment, asserting that Palmer was required to exhaust available internal grievance procedures before bringing her wrongful discharge action. The Regents explained Palmer had available both the general employee grievance .procedure described in the complaint resolution section of the pamphlet entitled Personnel Policies for Staff Members (PPSM) and the more specific internal grievance process involving retaliation for reporting improper activities, outlined in the document, UCLA Procedures for Reporting Whistle Blowing Complaints. Although Palmer did file a grievance under the PPSM alleging discrimination based on age, race and sex, as well as retaliation for her participation in union organizational activities, she abandoned that grievance before it was finally resolved. No internal complaint or grievance was ever filed claiming she was the victim of retaliation for reporting unlawful activity at UCLA.

Palmer responded to the motion by arguing exhaustion of administrative remedies is not a valid affirmative defense to a common law cause of action for wrongful discharge in violation of public policy. She did not contend the Regents' internal grievance procedures are inadequate for adjudication of her claim of wrongful termination.

The trial court once again granted the Regents' motion for summary judgment, agreeing with the Regents that Palmer was required to pursue internal grievance procedures before filing her lawsuit. Palmer filed a timely notice of appeal.

### DISCUSSION

1. *Palmer's Failure to Exhaust Internal Grievance Procedures Precludes Her Civil Action for Wrongful Termination*

In *Westlake Community Hosp. v. Superior Court* (1976) 17 Cal.3d 465 [131 Cal.Rptr. 90, 551 P.2d 410] (*Westlake*), the Supreme Court held a physician's failure to pursue a hospital's internal grievance process barred his civil suit for damages based on the hospital's purportedly improper denial of staff privileges. "[A] doctor who has been denied hospital staff privileges must exhaust all available internal remedies before instituting any judicial action, including an action seeking only damages . . . ." (*Id.* at p. 485.) In *Rojo v. Kliger* (1990) 52 Cal.3d 65 [276 Cal.Rptr. 130, 801 P.2d 373] (*Rojo*), the Supreme Court distinguished *Westlake* (*id.* at p. 86) and held that, while

an employee must exhaust the administrative remedy made available by the Fair Employment and Housing Act (Gov. Code, § 12900 et seq.)[1] (FEHA) before bringing a cause of action under FEHA, exhaustion is not required before filing a civil action for damages alleging nonstatutory causes of action. (*Rojo*, at p. 88 [tort of wrongful discharge in violation of public policy against sex discrimination and sexual harassment in employment]; accord, *Stevenson v. Superior Court* (1997) 16 Cal.4th 880, 905 [66 Cal.Rptr.2d 888, 941 P.2d 1157] (*Stevenson*) [applying exhaustion analysis of *Rojo* to claim of wrongful discharge in violation of public policy against age discrimination].)

The difference between *Westlake*, where exhaustion was required, and *Rojo* and *Stevenson*, where it was not, is that *Westlake* involved the use of *internal* grievance procedures, made available to an employee or member by the organization itself. (See, e.g., *Rojo, supra,* 52 Cal.3d at p. 87 [courts "with little, or no, analysis" have extended *Westlake,* which "concerned the exhaustion of private internal remedies," "to require exhaustion of 'external' administrative remedies in a variety of public contexts"].) ▮ When a statute such as FEHA provides an administrative process for resolution of grievances, exhaustion of those administrative remedies is a precondition to bringing a civil suit on a statutory cause of action, but not for seeking judicial relief on a common law tort claim for wrongful termination in violation of public policy. (*Stevenson, supra,* 16 Cal.4th at p. 905 ["An employee's post-termination failure to exhaust administrative remedies has no bearing on whether the termination violated the public policy expressed through the statutory prohibition against age discrimination, and thus the employee's post-termination administrative default does not preclude assertion of a nonstatutory tort claim for wrongful termination in violation of public policy."].) ▮ When a private association or public entity establishes an internal grievance mechanism, as the Regents has done, failure to exhaust those internal remedies precludes any subsequent private civil action. (*Rojo*, at p. 86; *Westlake, supra,* 17 Cal.3d at p. 485.)

Although *Westlake* involved exhaustion of internal grievance procedures maintained by a voluntary private association (*Westlake, supra,* 17 Cal.3d at p. 474), in *Rojo* the Supreme Court confirmed that the *Westlake* exhaustion doctrine was not confined to private associations and voluntary organizations. In the course of explaining why *Westlake* did not mandate exhaustion of FEHA administrative procedures before proceeding with a judicial action for the common law tort of wrongful discharge in violation of public policy, the *Rojo* court defined the "context" in which exhaustion of internal remedies was a precondition to a civil suit: "We agree the exhaustion doctrine,

---

[1]All statutory references are to the Government Code unless otherwise indicated.

when applicable, serves important policy considerations. . . . As we stated in *Westlake*, 'From the earliest decisions reviewing actions of voluntary private associations, . . . our courts have recognized the applicability of the exhaustion of remedies doctrine in this context.' [Citations.] [¶] *The 'context' to which Westlake properly applies is where the party or entity whose 'quasi-judicial' determination is challenged—be it hospital, voluntary private or professional association, or public entity—has provided an internal remedy.* [Citations, including *City of Fresno v. Superior Court* (1987) 188 Cal.App.3d 1484, 1490-1491 [234 Cal.Rptr. 136] (city); *Edgren v. Regents of University of California* (1984) 158 Cal.App.3d 515 [205 Cal.Rptr. 6] (university); and *Logan v. Southern Cal. Rapid Transit Dist.* (1982) 136 Cal.App.3d 116, 123-124 [185 Cal.Rptr. 878] (state-funded agency).]" (*Rojo, supra*, 52 Cal.3d at p. 86, italics added.)

As made plain by *Rojo*'s expansive definition of the "context" in which the doctrine properly applies, the rationale for *Westlake*'s exhaustion requirement is not the existence of a contractual relationship between the plaintiff and the defendant entity. Indeed, the Supreme Court specifically rejected that notion when it recognized that the exhaustion doctrine was equally applicable to an *applicant* for membership who has been denied admission to the organization and an individual whose membership has been revoked. (*Westlake, supra*, 17 Cal.3d at p. 475 & fn. 4.) Exhaustion of internal grievance procedures is required not because of contractual obligation but because of "compelling" policy considerations: "[A]n exhaustion of remedies requirement serves the salutary function of eliminating or mitigating damages. If an organization is given the opportunity quickly to determine through the operation of its internal procedures that it has committed error, it may be able to minimize, and sometimes eliminate, any monetary injury to the plaintiff by immediately reversing its initial decision and affording the aggrieved party all membership rights; an individual should not be permitted to increase damages by foregoing available internal remedies. [Citation.] [¶] Moreover, by insisting upon exhaustion even in these circumstances [where the plaintiff is seeking only damages and not reinstatement], courts accord recognition to the 'expertise' of the organization's quasi-judicial tribunal, permitting it to adjudicate the merits of the plaintiff's claim in the first instance." (*Id.* at p. 476; accord, *Edgren v. Regents of University of California, supra*, 158 Cal.App.3d at p. 521.)[2]

 The " 'context' to which *Westlake* properly applies" is precisely the situation now before this court. As was true in *Westlake*, plaintiff Patricia

---

[2]The dissent's distinction of *Edgren v. Regents of University of California, supra*, 158 Cal.App.3d 515, is based on an unduly narrow reading of the case. Although the plaintiff may have had a contractual relationship with the Regents, the decision by Division Six of our court that the doctrine of exhaustion of internal grievance procedures barred his "action for damages, whether based on contract or tort" was grounded on the general polices articulated in *Westlake*, not the terms of his employment agreement. (*Id.* at pp. 520, 523.)

Palmer had available to her internal grievance procedures that, if used, could have eliminated or at least minimized any injury she has sustained. (*Westlake, supra,* 17 Cal.3d at p. 476.)[3] Accordingly, the trial court properly granted the Regents' motion for summary judgment based on Palmer's failure to exhaust internal grievance procedures. (*California Correctional Peace Officers Assn. v. State Personnel Bd.* (1995) 10 Cal.4th 1133, 1151 [43 Cal.Rptr.2d 693, 899 P.2d 79] [exhaustion requirement is jurisdictional].)

2. *The Primary Jurisdiction Doctrine Has No Application to the Requirement That Internal Grievance Procedures Be Utilized Before a Civil Action Is Initiated*

As the Supreme Court noted in *Rojo, supra,* 52 Cal.3d at page 87, a number of courts have confused or conflated issues involving exhaustion of private *internal* grievance procedures with the distinct doctrine requiring exhaustion of *external* administrative remedies. The dissent compounds this problem by relying on principles associated with the doctrine of primary jurisdiction, a corollary to the doctrine of exhaustion of administrative remedies that is itself often confused with the exhaustion doctrine (*Farmers Ins. Exchange v. Superior Court* (1992) 2 Cal.4th 377, 390 [6 Cal.Rptr.2d 487, 826 P.2d 730]), to analyze the separate question whether internal grievance procedures must be utilized before filing a lawsuit.[4]

The primary jurisdiction doctrine obligates a litigant to apply to an outside regulatory agency (for example, the state Insurance Commissioner, the Federal Communications Commission or the Civil Aeronautics Board) for relief before pursuing a civil action. It, like the closely related doctrine of exhaustion of external administrative remedies, arises in the context of complex regulatory schemes utilizing expert administrative agencies. Both doctrines are, in the words of the Supreme Court, " 'essentially doctrines of comity between courts and agencies. They are two sides of the timing coin: Each determines whether an action may be brought in a court or whether an agency proceeding, or further agency proceeding, is necessary.' [Citation.]"

___

[3]Because Palmer did not pursue to completion the grievance procedures available to her under either the PPSM or the UCLA procedures for reporting whistleblowing complaints, it is unnecessary for us to consider whether she was required to exhaust both internal remedies before filing her lawsuit. That issue is currently pending before the Supreme Court. (*Schifando v. City of Los Angeles* (2002) 97 Cal.App.4th 312 [118 Cal.Rptr.2d 286], review granted July 10, 2002, S106660 [must a city employee exhaust both administrative remedies under the city charter and administrative remedies under FEHA before bringing suit on an employment discrimination claim].)

[4]This confusion is exemplified by the dissent's discussion of the Supreme Court's purported analysis of "the principles underlying the doctrine of primary jurisdiction" in *Westlake, supra,* 17 Cal.3d 465. In fact, the primary jurisdiction doctrine is not mentioned in *Westlake,* a case that involves exhaustion of internal grievance procedures.

(*Farmers Ins. Exchange v. Superior Court, supra,* 2 Cal.4th at p. 390.)
" ' *"Exhaustion" applies where a claim is cognizable in the first instance by an administrative agency alone*; judicial interference is withheld until the administrative process has run its course. *"Primary jurisdiction," on the other hand, applies where a claim is originally cognizable in the courts,* and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views.' [Citations.]" (*Ibid.*)

Justice Frankfurter authored the classic statement of the principles underlying the primary jurisdiction doctrine in *Far East Confer. v. United States* (1952) 342 U.S. 570, 574-575 [72 S.Ct. 492, 494, 96 L.Ed. 576]: "Uniformity and consistency in the regulation of business entrusted to a particular agency are secured, and the limited functions of review by the judiciary are more rationally exercised, by preliminary resort for ascertaining and interpreting the circumstances underlying legal issues to agencies that are better equipped than courts by specialization, by insight gained through experience, and by more flexible procedure." The primary jurisdiction doctrine is thus grounded in the judiciary's desire to take advantage of administrative expertise and to help ensure uniform application of complex regulatory laws. (*Farmers Ins. Exchange v. Superior Court, supra,* 2 Cal.4th at p. 391.)

The dissent is correct that cases alleging wrongful termination in violation of public policy typically do not involve issues of such a complex or technical nature that the doctrine of primary jurisdiction is properly invoked, and the Regents does not argue to the contrary. But very different policy considerations support the requirement that an employee pursue to completion *internal* grievance procedures before initiating a lawsuit concerning an adverse employment decision—principally, the desire to provide an opportunity for the employer (*not* an outside administrative agency) to quickly and efficiently redress a grievance and thereby minimize or even eliminate injury to the plaintiff. (*Westlake, supra,* 17 Cal.3d at p. 476.) Even though the doctrine of primary jurisdiction may be inapplicable to wrongful termination and employment discrimination cases,[5] the principles articulated in *Westlake* are fully applicable here.

---

[5]The dissent correctly notes that in *Farmers Ins. Exchange v. Superior Court, supra,* 2 Cal.4th at page 396, footnote 15, the Supreme Court explained that *Rojo, supra,* 52 Cal.3d 65 referred to " 'exhaustion' of administrative remedies" but "we were in fact considering a question of prior resort to administrative procedures under the primary jurisdiction doctrine." Nonetheless, seven years after *Farmers Ins. Exchange,* the Supreme Court revisited the issues decided in *Rojo* (a sex discrimination case) in *Stevenson, supra,* 16 Cal.4th 880 (an age discrimination case), and once again analyzed the question in terms of exhaustion of

### 3. *Section 8547.10 Requires Exhaustion of the Regents' Internal Grievance Procedures*

██ The policy underlying section 8547.10, part of the California Whistleblower Protection Act, reinforces the propriety of applying the *Westlake* doctrine to preclude Palmer's action against the Regents for wrongful termination without first exhausting the university's internal grievance procedures. Section 8547.10, subdivision (c), specifically applicable to employees of the University of California, provides, "[A]ny person who intentionally engages in acts of reprisal, retaliation, threats, coercion, or similar acts against a university employee, including an officer or faculty member, or applicant for employment for having made a protected disclosure shall be liable in an action for damages brought against him or her by the injured party. . . . However, any action for damages shall not be available to the injured party *unless the injured party has first filed a complaint with the university officer identified pursuant to subdivision (a)*,[6] and the university has failed to reach a decision regarding that complaint within the time limits established for that purpose by the regents." (Italics added.)[7]

The manual, UCLA Procedures for Reporting Whistle Blowing Complaints, contains the UCLA campus procedures for implementing the university's

---

administrative remedies: "An employee's post-termination failure to exhaust administrative remedies has no bearing on whether the termination violated the public policy expressed through the statutory prohibition against age discrimination, and thus the employee's post-termination administrative default does not preclude assertion of a nonstatutory tort claim for wrongful termination in violation of public policy." (*Id.* at p. 905.)

[6]Section 8547.10, subdivision (a) provides: "(a) A University of California employee, including an officer or faculty member, or applicant for employment may file a written complaint with his or her supervisor or manager, or with any other university officer designated for that purpose• by the regents, alleging actual or attempted acts of reprisal, retaliation, threats, coercion, or similar improper acts for having made a protected disclosure, together with a sworn statement that the contents of the written complaint are true, or are believed by the affiant to be true, under penalty of perjury. The complaint shall be filed within 12 months of the most recent act of reprisal complained about."

[7]The Supreme Court is currently considering whether a plaintiff must exhaust an internal administrative remedy provided by a public employer before filing an action under the False Claims Act (Gov. Code, § 12653) or for violation of Labor Code section 1102.5, which bars an employer from retaliating "against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of state or federal statue, or violation or noncompliance with a state or federal regulation." (*Campbell v. Regents of University of California* (Dec. 23, 2002, A097560) [nonpub. opn.], review granted Mar. 19, 2003, S113275.) Unlike Government Code section 8547.10, however, neither of the statutory provisions at issue in *Campbell* contains an express exhaustion requirement.

responsibilities under section 8547.10.[8] Pursuant to section 8547.10, subdivision (c), therefore, pursuing the internal remedies described in the UCLA manual is an administrative prerequisite to filing a civil action for wrongful termination in violation of public policy against retaliation for reporting unlawful activity. (See *Hood v. Hacienda La Puente Unified School Dist.* (1998) 65 Cal.App.4th 435, 440-441 [76 Cal.Rptr.2d 448].) Compliance with section 8547.10, subdivision (c), is jurisdictional. (*California Correctional Peace Officers Assn. v. State Personnel Bd., supra,* 10 Cal.4th at p. 1151; *Abelleira v. District Court of Appeal* (1941) 17 Cal.2d 280, 292 [109 P.2d 942, 132 A.L.R. 715].)

Although section 8547.10, subdivision (f), added to the statute after Palmer filed her lawsuit against the Regents, expressly preserves an employee's remedies under any other state law,[9] a common law action for wrongful termination in violation of public policy against retaliation for reporting unlawful activity is generally not a "remedy under state law" available to a plaintiff in Palmer's position. "Except as otherwise provided by statute: [¶] (a) A public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person." (§ 815, subd. (a).) The Regents is a public entity. (§ 811.2.) The only statutory authorization for a civil damage action based on alleged retaliation against a University of California employee for reporting improper activity is section 8547.10. Accordingly, a university employee who believes she is the victim of retaliation is limited to a statutory claim for damages under section 8547.10.[10] Because the "classic *Tameny* cause of action" is a common law, judicially created tort (*Tameny v. Atlantic Richfield Co., supra,* 27 Cal.3d 167, 176-178; see *Stevenson, supra,* 16 Cal.4th at pp. 906-908) and not authorized by statute, it is not properly asserted against the Regents.

---

[8] On December 18, 1989, the office of the president of the University of California issued its Policy for Reporting Improper Governmental Activities and Protection Against Retaliation for Reporting Improper Activities, effective January 1, 1990, to enforce the university's responsibilities under former section 10550, the predecessor to section 8547.10. The UCLA manual was prepared and issued pursuant to that policy statement.

[9] Subdivision (f) was added to section 8547.10 by Statutes 1999, chapter 673, section 7, effective January 1, 2000. Subdivision (f) provides: "Nothing in this article shall be deemed to diminish the rights, privileges, or remedies of any employee under any other federal or state law or under any employment contract or collective bargaining agreement."

[10] An injured party's recovery under this section may include punitive damages and reasonable attorney fees. (§ 8547.10, subd. (c).) In addition, unlike claims under FEHA or for the common law tort of wrongful termination in violation of public policy (see *Reno v. Baird* (1998) 18 Cal.4th 640 [76 Cal.Rptr.2d 499, 957 P.2d 1333]), an injured party may sue his or her supervisor under section 8547.10, rather than only the employer.

 Because this court previously concluded Palmer had stated a common law cause of action for wrongful discharge in violation of public policy,[11] we do not hold the Regents are immune from her *Tameny* action under section 815, subdivision (a)—an argument not asserted by the Regents' counsel in either the current or prior appeal. Nonetheless, the Legislature's decision to require university employees to exhaust internal grievance procedures as a prerequisite to filing a whistle-blower suit pursuant to section 8547.10, subdivision (c), reinforces our conclusion that *Westlake* applies to the case at bar and that the trial court properly granted the Regents' motion for summary judgment based on Palmer's failure to utilize the internal grievance procedures available to her.

## DISPOSITION

The judgment is affirmed. Respondent The Regents of the University of California is to recover its costs on appeal.

Woods, J., concurred.

**JOHNSON, J.**—I respectfully dissent.

The issue before us is whether the plaintiff in a common law action for wrongful discharge in violation of public policy should be judicially required to resort to her employer's internal grievance procedure when no statute, contractual provision, or pertinent public policy requires her to do so.[1] I would decline to impose such a requirement under the facts and circumstances of this case and would therefore reverse the judgment for defendants.

Under section 70 of the Regents' Personnel Policies for Staff Members (PPSM), an employee may complain of "a specific management act which is

---

[11]Under the law of the case doctrine, "a matter adjudicated on a prior appeal normally will not be relitigated on a subsequent appeal in the same case." (*Davies v. Krasna* (1975) 14 Cal.3d 502, 507 [121 Cal.Rptr. 705, 535 P.2d 1161, 79 A.L.R.3d 807].) " 'The doctrine is generally applied upon retrial of a case following reversal of the judgment on appeal, and "deals with the effect of the *first appellate decision* on the subsequent *retrial or appeal*: The decision of an appellate court, stating a rule of law necessary to the decision of the case, conclusively establishes that rule and makes it determinative of the rights of the same parties in any subsequent retrial or appeal in the same case." [Citation.]' [Citation.]" (*Shelton v. Rancho Mortgage & Investment Corp.* (2002) 94 Cal.App.4th 1337, 1347 [115 Cal.Rptr.2d 82].)

[1]Our Supreme Court has agreed to resolve a similar issue in *Campbell v. Regents of University of California* (Dec. 23, 2002, A097560) (nonpub. opn.), review granted March 19, 2003, S113275. The issue before the Court of Appeal in *Campbell* was whether a university employee must exhaust an internal administrative remedy provided by the Regents before filing an action under the False Claims Act (Gov. Code, § 12653) or the whistleblower protection provisions of Labor Code section 1102.5 and was decided in favor of the Regents.

alleged to have adversely affected the employee's existing terms or conditions of employment" or a management action which violates a provision of the PPSM. Accompanying these two types of complaints is a detailed internal review and appeal process. The PPSM contains a policy against "reprisal or intimidation due to disclosure of improper governmental activities," i.e., whistleblowing.

In addition to the PPSM, the UCLA manual on Procedures for Reporting Whistle Blowing Complaints (UCLA Procedures) contains its own detailed remedial scheme for employees "alleging threatened or actual interference or retaliation resulting from the reporting of improper activities." The latter scheme involves a confidential complaint process and the enlistment of a "whistleblowing adviser."

The crux of the Regents' argument is that the PPSM and the UCLA Procedures contain administrative and internal remedies which must be exhausted before an aggrieved employee may sue in court over an alleged wrongful termination. It is not clear from the Regents' brief whether they believe Patricia A. Palmer was required to exhaust one or both of these internal grievance procedures before filing suit for wrongful discharge in violation of public policy.

For her part, Palmer does not contend the Regents' internal grievance procedures are unavailable or inadequate for adjudicating a claim of wrongful discharge in violation of public policy. Rather, she contends these internal procedures are options afforded to university employees who may or may not elect to make use of them in pursuing a claim for wrongful termination.

California courts have long recognized "where a statutory remedy is provided for a preexisting common law right, the newer remedy is generally considered to be cumulative, and the older remedy may be pursued at the plaintiff's election."[2] For the reasons explained below I see no reason why the general rule applicable to statutory remedies should not also apply to the Regents' and UCLA's administrative remedies.

While the public policy violated in a common law wrongful termination cause of action must be "tethered to" a constitutional or statutory provision, the cause of action itself is a judicially recognized common law cause of

---

[2]*Rojo v. Kliger* (1990) 52 Cal.3d 65, 79 [276 Cal.Rptr. 130, 801 P.2d 373].

action which precedes the Regents' whistleblower policy by several decades.[3] As discussed in the majority opinion, Palmer claims she was discharged for reporting violations of law in the hospital laboratory to defendants and others. This presents a classic *Tameny* cause of action for discharge in violation of public policy.[4] Thus, under the general rule described above, absent a specific exhaustion requirement in the PPSM or UCLA Procedures, the grievance procedures contained therein are cumulative, not exclusive.[5]

I recognize that in certain situations courts have held an employee alleging wrongful termination must exhaust available administrative remedies or internal grievance procedures before seeking tort damages in court. This exhaustion requirement applies, for example, when the employee alleges a statutory cause of action and the statute contains an administrative remedy;[6] when the employee is covered by a collective bargaining agreement which

---

[3]*Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167, 172, 176 [164 Cal.Rptr. 839, 610 P.2d 1330, 9 A.L.R.4th 314] and cases cited therein. In *Tameny*, the Supreme Court traced California's recognition of the tort of wrongful discharge in violation of public policy as far back as 1949. (*Id.* at p. 176, citing *Kouff v. Bethlehem-Alameda Shipyard* (1949) 90 Cal.App.2d 322 [202 P.2d 1059].) The Regents adopted their whistleblower policy effective January 1, 1990, pursuant to their responsibilities under former Government Code section 10550 enacted in 1988. (Stats 1988, ch. 1385, § 3, pp. 4668-4669) Whistleblower protection for University of California employees is now found in Government Code section 8547.10 discussed below.

[4]Compare *Green v. Ralee Engineering Co.* (1998) 19 Cal.4th 66, 74 [78 Cal.Rptr.2d 16, 960 P.2d 1046] (discharge for reporting violation of airline safety regulations supports *Tameny* cause of action). Palmer's report of violations of law in the laboratory appears to have been based at least in part on California Code of Regulations, title 17, section 1050, subdivision (h) which states: "Clinical laboratory test results shall not be reported from the laboratory until these results have been critically reviewed and verified for accuracy, reliability, and validity by a licensed physician [or licensed clinical laboratory technician]." This regulation was adopted by the State Department of Health Services under Business and Professions Code section 1224, which gives the department authority to adopt regulations necessary for the administration or enforcement of division 2, chapter 3 of the Business and Professions Code (§§ 1200-1327). Section 1220, subdivision (b) of the Business and Professions Code provides: "Each clinical laboratory shall be conducted, maintained, and operated without injury to the public health." Clearly, Palmer's report was based on a regulation designed to promote public health and safety.

[5]Indeed, as I explain below, the Legislature has explicitly made this general rule applicable to university whistleblowers in Government Code section 8547.10, subdivision (f). (All future statutory references are to the Government Code.)

[6]*Romano v. Rockwell Internat., Inc.* (1996) 14 Cal.4th 479, 492 [59 Cal.Rptr.2d 20, 926 P.2d 1114] (the administrative remedy provided by the FEHA must be exhausted before bringing a civil action based on a FEHA violation); *Hood v. Hacienda La Puente Unified School Dist.* (1998) 65 Cal.App.4th 435, 438, 439-440 [76 Cal.Rptr.2d 448] (administrative remedy provided by whistleblower statute must be exhausted before bringing a civil action based on violation of the statute).

contains an applicable grievance procedure;[7] and when the employee is a party to an employment contract which requires arbitration or grievance of the alleged wrongful termination.[8] I would further concede under principles derived from the "primary jurisdiction" doctrine, an employee without a contractual or statutory obligation to exhaust her employer's internal grievance procedure may be required to do so before proceeding with her lawsuit if the employer has a " 'pervasive and self-contained system of administrative procedure' " for resolving the grievance and the facts in issue are "of a complex or technical nature" calling for the application of the employer's special expertise and judgment.[9]

None of these grounds for requiring exhaustion of internal remedies apply here. Palmer is not asserting a statutory cause of action or one founded on the PPSM or UCLA Procedures. I have searched the record for any evidence of a collective bargaining agreement or employment contract which would require Palmer to exhaust the Regents' internal grievance procedures and have found none.[10] Nor have I found any statute which would require exhaustion of the Regents' internal procedures before bringing a common law wrongful termination claim based on violation of public policy.[11] Indeed, I have found no language in the PPSM or UCLA Procedures themselves which obligates an employee to avail herself of those procedures before suing on a common law cause of action for wrongful discharge in violation of public policy. Furthermore, the principles underlying the doctrine of primary jurisdiction do not support submission of Palmer's wrongful termination claim to the Regents for preliminary adjudication.

The Regents offer three reasons why Palmer was required to exhaust their internal grievance procedures.

---

[7]*Johnson v. Hydraulic Research & Mfg. Co.* (1977) 70 Cal.App.3d 675, 679 [139 Cal.Rptr. 136] (grievance procedures in collective bargaining agreement intended as exclusive remedy for employee claiming improper discharge for drug use).

[8]*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 90 [99 Cal.Rptr.2d 745, 6 P.3d 669] (agreement by employee to arbitrate wrongful termination claim).

[9]*Rojo v. Kliger, supra,* 52 Cal.3d at pages 87-88.

[10]The absence of any contractual agreement by Palmer to exhaust the Regents' internal grievance procedures is particularly significant because, as explained below, participation in the grievance procedure may prevent Palmer from ever obtaining a jury trial on her wrongful termination action. See discussion, *post,* at pages 919-920.

[11]See discussion of section 8547.10, *post,* at pages 918-919.

They principally rely on the *Westlake Community Hosp.* line of cases,[12] including *Edgren v. Regents of University of California*,[13] for the proposition that if an employer makes an internal remedy available to resolve a dispute the employee must exhaust such remedy before resorting to litigation.

*Westlake* was not an employment case and was not decided on employment law principles. It was a case involving admission to a private hospital medical staff and was decided on principles of law pertaining to private voluntary associations.[14]

The exhaustion issue in *Westlake* arose in the context of the plaintiff doctor's suit against a codefendant, Los Robles Hospital, for damages resulting from denial of hospital staff privileges. The Westlake defendants moved for summary judgment on the ground the plaintiff had not exhausted Los Robles' internal grievance procedure.[15] When the trial court denied the motion, the Westlake defendants sought a writ of prohibition to restrain the trial court from proceeding with the plaintiff's action.[16] The Supreme Court held "a doctor who has been denied hospital staff privileges must exhaust all available internal remedies before instituting any judicial action, including an action seeking only damages."[17] The court denied the writ, however, because the defendants' affidavits did not establish Los Robles provided an available remedy which the plaintiff failed to exhaust.[18]

In reaching its holding in *Westlake,* the Supreme Court concluded the principles underlying the doctrine of primary jurisdiction require a doctor challenging her exclusion from staff privileges at a private hospital to resort to the hospital's internal grievance procedures even though the doctor had no contractual or statutory obligation to do so. The Regents contend the trial court here properly followed *Westlake* in holding Palmer was required to submit her wrongful termination claim to the Regents' grievance procedure. They point to *Edgren v. Regents of University of California,* which reached a similar conclusion with respect to a university employee who did not exhaust

---

[12]*Westlake Community Hosp. v. Superior Court* (1976) 17 Cal.3d 465 [131 Cal.Rptr. 90, 551 P.2d 410] (*Westlake*).

[13]*Edgren v. Regents of University of California* (1984) 158 Cal.App.3d 515 [205 Cal.Rptr. 6] (*Edgren*).

[14]*Westlake, supra*, 17 Cal.3d at page 474.

[15]*Westlake, supra*, 17 Cal.3d at page 473. For procedural reasons not relevant to this discussion the Westlake defendants were allowed to make this exhaustion argument on behalf of Los Robles. (*Id.* at p. 470, fn. 2.)

[16]*Westlake, supra*, 17 Cal.3d at page 474.

[17]*Westlake, supra*, 17 Cal.3d at page 485.

[18]*Westlake, supra*, 17 Cal.3d at page 485.

the Regents' grievance procedure in challenging his termination from employment.[19]

The doctrine of primary jurisdiction comes into play when claims are originally cognizable in judicial forums and in nonjudicial forums, usually administrative agencies, and raises issues " 'within the special competence of an administrative body.' "[20] The principles underlying the doctrine, however, are not limited to claims cognizable by administrative agencies. They have been applied in the *Westlake* context to a physician's claim a hospital committee wrongfully revoked his surgical privileges.[21]

The doctrine of primary jurisdiction differs from the doctrine of exhaustion of administrative remedies in that " 'Exhaustion applies where an agency alone has exclusive jurisdiction over a case; primary jurisdiction where both a court and an agency have the legal capacity to deal with the matter.' "[22] The policy reasons behind the two doctrines, however, are similar and overlapping. The exhaustion doctrine is principally grounded on administrative autonomy and judicial efficiency.[23] The primary jurisdiction doctrine is grounded on the courts' desire to take advantage of administrative expertise and to assure uniform application of regulatory laws.[24] "No rigid formula exists for applying the primary jurisdiction doctrine."[25] In addition to the policy considerations noted above, courts consider the adequacy or inadequacy of the administrative remedy including the expense and delay to the litigants.[26] If an issue is referred to an administrative agency under the primary jurisdiction doctrine the action is not dismissed but stayed pending resolution of the issues within the agency's expertise.[27]

Despite the "considerable flexibility" afforded the courts in applying the primary jurisdiction doctrine,[28] our Supreme Court has identified two elements which must be present before a matter is referred to an administrative agency. First, the agency must have a " 'pervasive and self-contained system

---

[19]*Edgren, supra,* 158 Cal.App.3d at pages 521-522.

[20]*Farmers Ins. Exchange v. Superior Court* (1992) 2 Cal.4th 377, 390-391 (*Farmers Ins. Exchange*) [6 Cal.Rptr.2d 487, 826 P.2d 730].

[21]See, e.g., *Rogers v. Columbia/HCA of Central Louisiana, Inc.* (W.D.La. 1997) 961 F.Supp. 960, 966-968.

[22]*Farmers Ins. Exchange, supra,* 2 Cal.4th at pages 390-391.

[23]*Farmers Ins. Exchange, supra,* 2 Cal.4th at page 391.

[24]*Farmers Ins. Exchange, supra,* 2 Cal.4th at page 391.

[25]*Farmers Ins. Exchange, supra,* 2 Cal.4th at page 391.

[26]*Farmers Ins. Exchange, supra,* 2 Cal.4th at page 391 and footnote 9.

[27]*South Bay Creditors Trust v. General Motors Acceptance Corp.* (1999) 69 Cal.App.4th 1068, 1081 [82 Cal.Rptr.2d 1]; and see *Farmers Ins. Exchange, supra,* 2 Cal.4th at page 401.

[28]*Farmers Ins. Exchange, supra,* 2 Cal.4th at page 392.

of administrative procedure.' . . ."[29] Second there must be factual issues "of a complex or technical nature beyond the usual competence of the judicial system."[30]

In *Westlake* the facts showed the plaintiff's application for staff privileges at Los Robles Hospital was considered by the hospital's medical committee which conducted an independent investigation of her qualifications. The committee's decision to deny the application was reviewed by the medical executive committee and the hospital's board of directors.[31] More importantly, the court, analogizing to cases involving denial of membership in private associations such as fraternal organizations and unions,[32] found deferring to the hospital on the issue of the plaintiff's qualifications for staff membership was appropriate given the hospital's "expertise," and "familiarity" with the issues.[33]

In contrast to *Westlake*, the Supreme Court in *Rojo v. Kliger* held resort to the FEHA was unnecessary before a plaintiff could proceed with a civil suit based on common law claims for damages resulting from sex discrimination in employment.[34] The court found the FEHA "does not have a 'pervasive and self-contained system of administrative procedure' . . . for general regulation or monitoring of employer-employee relations so as to assess or prevent discrimination or related wrongs in the employment context[.]"[35] And, unlike denial of membership in a private association, the court found "the factual issues in an employment discrimination case [are not] of a complex or technical nature beyond the usual competence of the judicial system."[36] Employment discrimination cases, the court held, "are not cases having such a paramount need for specialized agency fact-finding expertise as to require exhaustion of administrative remedies before permitting an aggrieved person to pursue his or her related nonstatutory claims and remedies in court."[37]

In my view, *Rojo*, not *Westlake*, is the pertinent authority here.

---

[29]*Rojo v. Kliger, supra,* 52 Cal.3d at page 87, citation omitted.

[30]*Rojo v. Kliger, supra,* 52 Cal.3d at page 88.

[31]*Westlake, supra,* 17 Cal.3d at page 472.

[32]*Westlake, supra,* 17 Cal.3d at pages 474, 475-476. See *Robinson v. Templar Lodge, I. O. O. F.* (1897) 117 Cal. 370, 375 [49 P. 170]; *Levy v. Magnolia Lodge, I. O. O. F.* (1895) 110 Cal. 297, 299, 307-308 [42 P. 887]; *Neto v. Conselho Amor. etc.* (1912) 18 Cal.App. 234, 235, 237-238 [122 P. 973]; *Kopke v. Ranney* (1962) 16 Wis. 2d 369 [114 N.W.2d 485, 486-489].

[33]*Westlake, supra,* 17 Cal.3d at pages 475-476.

[34]*Rojo v. Kliger, supra,* 52 Cal.3d at pages 87-88.

[35]*Rojo v. Kliger, supra,* 52 Cal.3d at pages 87-88, citation omitted.

[36]*Rojo v. Kliger, supra,* 52 Cal.3d at page 88.

[37]*Rojo v. Kliger, supra,* 52 Cal.3d at page 88. In a subsequent decision the court clarified its reference in *Rojo* to "exhaustion of administrative remedies" when discussing the plaintiff's common law tort remedy. The court explained that although "we referred to 'exhaustion' of

Even assuming for the sake of argument the Regents' protection for whistleblowers constitutes a "pervasive and self-contained system of administrative procedure," this case does not meet the second prong of the test for primary jurisdiction because the factual issues in a case involving wrongful termination in violation of public policy are not "of a complex or technical nature beyond the usual competence of the judicial system."[38] Indeed, such cases are quite common in California courts.

*Edgren,* on which the Regents also rely, is distinguishable as well. Edgren, the University of California's principal architect, was laid off for alleged " 'budgetary reasons.' " He initiated a grievance proceeding but later abandoned it. In his complaint Edgren claimed the Regents engaged in fraud and failed to follow their own personnel policies in effectuating his layoff and in conducting his grievance hearing "all of which resulted in a breach of his employment contract."[39] The trial court sustained the Regents' demurrer based on Edgren's failure to exhaust administrative remedies and the Court of Appeal affirmed citing *Westlake* for the proposition "failure to exhaust administrative remedies will bar actions for damages, including tort claims."[40]

*Edgren* is not on point for several reasons. *Edgren* was essentially a breach of contract action in which the plaintiff claimed some ancillary tort damages. It was not a common law tort action for wrongful termination as is the case before us. Furthermore, it is apparent from the allegations in Edgren's complaint that, unlike Palmer, he had a contractual relationship with the Regents which included an obligation to pursue an internal grievance procedure.[41] Edgren did not dispute this obligation but maintained he was excused from exhausting his administrative remedies for a variety of reasons the court found to be without merit.[42]

In summary, I would hold an employee alleging a common law cause of action for wrongful termination of employment is not required to first resort to her employer's internal grievance procedure unless she is contractually or statutorily obligated to do so or the trial court determines in the exercise of

administrative remedies [in *Rojo*] we were in fact considering a question of prior resort to administrative procedures under the primary jurisdiction doctrine." (*Farmers Ins. Exchange, supra,* 2 Cal.4th at p. 396, fn. 15; see discussion of the similarities and differences between exhaustion and primary jurisdiction, *ante,* pages 915-916.) Therefore, *Rojo* is not authority for the proposition a plaintiff's common law tort remedy is subject to the "exhaustion" requirement applicable to a parallel statutory remedy.

[38]*Rojo v. Kliger, supra,* 52 Cal.3d at page 88.

[39]*Edgren, supra,* 158 Cal.App.3d at page 519. Plaintiff also sought damages for torts incidental to the breach of contract. (*Ibid.*)

[40]*Edgren, supra,* 158 Cal.App.3d at page 521.

[41]*Edgren, supra,* 158 Cal.App.3d at page 519.

[42]*Edgren, supra,* 158 Cal.App.3d at pages 521-523.

its discretion resort to the employer's administrative remedy would be consistent with the principles underlying the doctrine of primary jurisdiction.

Having determined neither a contractual obligation nor the principles of primary jurisdiction support referring plaintiff's claim to her employer's grievance procedure, I turn to the question whether plaintiff was statutorily obligated to exhaust the Regents' grievance procedure before bringing this action.

In an argument not raised by the Regents, the majority maintains the California Whistleblower Protection Act (CWPA)[43] requires Palmer to exhaust their internal grievance procedures before bringing an action for wrongful termination in violation of the public policy against retaliation for whistleblowing activity. On the contrary, the CWPA supports Palmer not the Regents.

Section 8547.10, specifically applicable to University of California employees, provides in subdivision (c) "[A]ny person who intentionally engages in acts of reprisal, retaliation, threats, coercion, or similar acts against a university employee . . . for having made a protected disclosure shall be liable in an action for damages brought against him or her by the injured party . . . . However, any action for damages shall not be available to the injured party unless the injured party has first filed a complaint with the university officer identified pursuant to subdivision (a), and the university has failed to reach a decision regarding that complaint within the time limits established for that purpose by the regents."

If Palmer was pursuing a statutory cause of action under section 8547.10, subdivision (c), I would agree she had to first exhaust the administrative remedy referred to in the statute.[44] But the Regents' argument ignores subdivision (f) of section 8547.10 which unambiguously excludes *Tameny* actions from the exhaustion requirement. Subdivision (f) states: "Nothing in this article shall be deemed to diminish the rights, privileges, or remedies of any employee under any other federal or state law . . . ." The CWPA's legislative history contains assurances "this bill does not diminish the rights, privileges or remedies of any employee under any other federal or state law or under any employment contract or collective bargaining agreement."[45] A common law action for wrongful termination in violation of public policy is

---

[43]Sections 8547-8547.12.

[44]*Hood v. Hacienda La Puente Unified School Dist.*, supra, 65 Cal.App.4th at pages 440-441.

[45]Senate Committee on Public Employment and Retirement, Report on Senate Bill No. 951 (1999-2000 Reg. Sess.) page 3; Assembly Committee on Public Employees, Retirement and Social Security, Report on Senate Bill No. 951 (1999-2000 Reg. Sess.) page 2.

a "remedy under state law."[46] Therefore a University of California whistle-blower is not required to exhaust the administrative remedy referenced in section 8547.10 except with respect to claims under that section.

This conclusion is bolstered by the fact the internal remedy the Regents claim must be exhausted was created to enforce the university's responsibilities under subdivision (a) of section 8547.10,[47] the very same statute which specifically exempts *Tameny* actions from the exhaustion requirement.[48]

Finally, the Regents contend even if Palmer is not contractually or statutorily bound to exhaust its internal grievance procedures, exhaustion is required by " 'compelling' policy considerations.' "[49]

I agree the exhaustion doctrine may serve important functions in some circumstances. Among other things, it permits the organization to resolve factual issues and apply its expertise in its rules and regulations to the dispute. It usually affords a less formal and more economical forum to resolve disputes and mitigate damages. And, even if the dispute is not finally resolved at the grievance stage, the above mentioned factors may still promote judicial economy in handling the dispute once it reaches court.[50]

Of course, it is one thing to agree exhaustion of internal remedies is a socially beneficial policy and quite another thing to judicially impose such a policy on an employment relationship in which the parties theoretically could have agreed to it, but did not. Courts interpret contracts for the parties, they do not make them. To paraphrase an observation frequently made with respect to arbitration, the policy favoring exhaustion of administrative remedies cannot displace the necessity for a voluntary agreement to submit to administrative remedies.[51]

The absence of any agreement by Palmer to submit her wrongful termination claim to the Regents' grievance procedure is particularly troubling because requiring Palmer to exhaust the Regents' internal remedies may prevent Palmer from ever obtaining a jury trial on her tort cause of action for wrongful discharge in violation of public policy. If Palmer submits her

[46]See *Stevenson v. Superior Court* (1997) 16 Cal.4th 880, 907, 909 [66 Cal.Rptr.2d 888, 941 P.2d 1157]; *Rojo v. Kliger, supra,* 52 Cal.3d at page 74.
[47]Formerly section 10550, subdivision (a). (Stats. 1988, ch. 1385, § 3, p. 4668.)
[48]Section 8547.10, subdivision (f), quoted *ante.*
[49]Majority opinion, *ante,* at page 905.
[50]See *Rojo v. Kliger, supra,* 52 Cal.3d at page 86; *Westlake, supra,* 17 Cal.3d at page 476.
[51]See *Lagatree v. Luce, Forward, Hamilton & Scripps* (1999) 74 Cal.App.4th 1105, 1129 [88 Cal.Rptr.2d 664] and cases cited therein.

wrongful termination claim to the grievance procedure and loses she cannot sue the Regents for wrongful termination even though she has exhausted her administrative remedy. She would first have to bring and win an action for administrative mandamus overturning the grievance decision against her.[52] And, although the parties have not briefed the issue, it appears the grievance decision would have to be upheld if there was substantial evidence to support it, a standard which obviously favors the Regents.[53] It is one thing for a party to knowingly enter into a contract waiving her constitutional right to a jury trial—this happens every day in arbitration agreements.[54] But even Palmer's own attorney could not unilaterally deprive her of her right to a jury trial.[55] I see no justification for the Regents or this court to deprive Palmer of this fundamental constitutional right in the name of judicial economy.[56]

One final observation: Although the Regents obviously approve of imposing an exhaustion requirement in this case, neither the Regents nor the majority suggest a doctrinal basis for restraining judges in other cases from imposing other terms and conditions of employment the judges might agree are socially beneficial or striking down terms and conditions they agree are socially harmful. Unless the courts are to become super-Regents, I do not believe policy choices among lawful alternatives should become a judicial function.

For the reasons explained above, in my view, the trial court erred in granting the Regents' motion for summary judgment based on failure to exhaust internal remedies.

Appellant's petition for review by the Supreme Court was denied July 9, 2003. George, C. J., and Brown, J., did not participate therein. Kennard, J., was of the opinion that the petition should be granted.

---

[52]*Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 70-71 [99 Cal.Rptr.2d 316, 5 P.3d 874]; *Westlake, supra,* 17 Cal.3d at page 484.

[53]See *Apte v. Regents of University of California* (1988) 198 Cal.App.3d 1084, 1091 [244 Cal.Rptr. 312].

[54]See *Madden v. Kaiser Foundation Hospitals* (1976) 17 Cal.3d 699, 714 [131 Cal.Rptr. 882, 552 P.2d 1178].

[55]*Blanton v. Womancare, Inc.* (1985) 38 Cal.3d 396, 404 [212 Cal.Rptr. 151, 696 P.2d 645, 48 A.L.R.4th 109].

[56]See *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 803-806 [79 Cal.Rptr.2d 273].