TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

FRANCESCA R. GESSNER
Acting Chief Deputy Attorney General

_____

|  |  |
|---|---|
| OPINION<br><br>of<br><br>FRANCESCA R. GESSNER<br>Acting Chief Deputy Attorney General[1]<br><br>MANUEL M. MEDEIROS<br>Deputy Attorney General | No. 23-601<br><br>June 3, 2025 |

The HONORABLE MIA BONTA, MEMBER OF THE STATE ASSEMBLY, has requested an opinion on the following questions concerning the California State Teachers' Retirement System.

## QUESTIONS PRESENTED AND CONCLUSIONS

1. May the Teachers' Retirement Board assess penalties under Education Code sections 23003, 23006, and 23008 against a county office of education for contribution and reporting errors attributable to a charter school on whose behalf the county superintendent of schools contributes and reports to the California State Teachers' Retirement System (CalSTRS)?

Yes. The Teachers' Retirement Board may assess penalties under Education Code sections 23003, 23006, and 23008 against a county office of education for contribution

---

[1] Attorney General Rob Bonta has recused himself from any personal involvement in the Department of Justice's response to this opinion request. Accordingly, the Acting Chief Deputy Attorney General has exercised final authority over the Department's handling of this matter.

1

and reporting errors attributable to a charter school on whose behalf the county supervisor of schools contributes and reports to CalSTRS.

      2.  If the answer to Question 1 is yes, does the county office of education, through its superintendent of schools, have an administrative remedy for contesting the assessment of a penalty the superintendent believes to be incorrect?

      Yes.  The county office of education, through its superintendent of schools, may seek and obtain an administrative appeal to contest the assessment of a penalty the superintendent believes to be incorrect.

      3.  If the answer to Question 1 is yes, does Education Code section 23012 authorize the county superintendent of schools to recover funds used to pay the assessment or penalty from the funds allotted to the charter school?

      Yes.  Education Code section 23012 authorizes the county superintendent of schools to recover funds used to pay the assessment or penalty from the funds allotted to the charter school.

## BACKGROUND

      This opinion request seeks clarification concerning the Teachers' Retirement Law based on concerns raised by the Alameda County Office of Education regarding employer-reporting and contribution-remittance obligations to the California State Teachers' Retirement System (commonly known as CalSTRS).[2]  As reflected in applicable regulations, charter schools do not report directly to CalSTRS; instead, the county superintendent of schools submits any required reports and contributions to the system as an intermediary on the charter school's behalf.[3]

---

[2] The Teachers' Retirement Law is codified at Education Code section 22000 et seq. Unless otherwise indicated, all statutory references in the text are to the Education Code.

[3] The county superintendent of schools is typically the head of the county office of education.  (See *Today's Fresh Start, Inc. v. Los Angeles County Office of Education* (2013) 57 Cal.4th 197, 207 & fn. 4.)  We use the terms "county superintendent" and "county office of education" interchangeably as context warrants.  Other than the county office of education (or superintendent of schools), "direct reports" to CalSTRS are limited to those specific school or community college *districts*—as opposed to individual charter or non-charter schools—that the Teachers' Retirement Board approves for direct reporting.  (Cal. Code Regs., tit. 5, § 27700, subd. (a)(4); see *id.* §§ 27702, 27703.)

The Alameda County Superintendent of Schools acts as the intermediary for a charter school in Alameda County.[4] If the county superintendent fails to timely forward the required contributions, or timely submit complete reports, the Education Code provides that the Teachers' Retirement Board "shall, in accordance with regulations, assess penalties."[5]

## ANALYSIS

The Teachers' Retirement Law established CalSTRS (sometimes referred to as the "system" in the relevant statutes) to provide retirement benefits to California's public school educators who teach pre-kindergarten through community college.[6] The Teachers' Retirement Board has plenary authority and fiduciary responsibility for administering the system, including regulating the duties of employers and other public authorities, and requiring essential reports.[7]

Teachers and other persons employed in connection with public schools, including charter schools, may participate as members of CalSTRS.[8] Members and their employers contribute a statutorily specified percentage of each member's compensation to the retirement plan.[9] Section 23000 requires employers to deduct the member's contribution from their creditable compensation and remit the correct amount, plus the employer's contribution, to CalSTRS in a timely fashion.[10] Section 23004 requires the county superintendent of schools—or school or community college district directly reporting to

---

[4] The charter school at issue is chartered by the Oakland Unified School District. The requestor informs us that the Alameda County Superintendent of Schools serves as the intermediary for 29 charter schools in Alameda County.

[5] Ed. Code, §§ 23003, 23008 (failure to remit timely contributions); Ed. Code, § 23006 (failure to submit timely reporting); see also Cal. Code Regs., tit. 5, §§ 27003, 27007.

[6] Ed. Code, § 22000 et seq.; *Blaser v. State Teachers' Retirement System* (2019) 37 Cal.App.5th 349, 356.

[7] Cal. Const., art. XVI, § 17, subd. (b); Ed. Code, §§ 22201, subd. (a), 22213, 22250; see *Duarte v. State Teachers' Retirement System* (2014) 232 Cal.App.4th 370, 384 (discussing statutory scheme governing Retirement Board).

[8] Ed. Code, §§ 22146 (defining "member"), 22119.5, subd. (a)(3) (creditable service performed for a charter school).

[9] Ed. Code, §§ 22901, 22950, 22950.5, 22951, 23001; 89 Ops.Cal.Atty.Gen. 248, 248-249 (2006).

[10] Ed. Code, §§ 23000, 23002. "Creditable compensation" includes salaries or wages and other remuneration for creditable service. (Ed. Code, § 22119.2.)

3

the Board with the Board's approval—to "submit a report monthly to the system containing information as the board may require in the administration of the plan."[11]

The Teachers' Retirement Law defines "employer" or "employing agency" to include the county superintendent of schools, school districts, and participating charter schools.[12]  A charter school may elect to make the state retirement plan available to its employees who perform creditable service on the same terms and conditions applicable to non-charter public schools in the chartering district.[13]

As mentioned above, charter schools are not authorized to report directly to CalSTRS.[14]  For this reason, the Retirement Law holds the county superintendent responsible for submitting all required contributions and monthly reports to CalSTRS on behalf of participating charter schools (as well as those school districts within the county that are not approved as CalSTRS "direct reports").[15]

1. **CalSTRS May Properly Assess Penalties under Education Code Sections 23003, 23006, and 23008 Against an Intermediary Superintendent for a Charter School's Contribution or Reporting Errors**

    a. **Penalties imposed under section 23003 for contribution errors**

Our requestor first asks whether CalSTRS may lawfully assess penalties against a county superintendent for violating the employer contribution requirements of section 23000, inasmuch as that statute imposes on an employer only the obligation to deduct and remit the contributions "of *members employed by the employer*."[16]  The request notes that, in the case of charter schools, the county superintendent is not the employer of the

---

[11] Ed. Code, § 23004.

[12] See Ed. Code, § 22131, subd. (a).

[13] Ed. Code, § 47611, subd. (a).

[14] See Cal. Code Regs., tit. 5, §§ 27700, subd. (a)(4) (limiting "direct report" to an elementary, high school, or unified school *district*, or a community college *district*, that is approved to report directly), 27702, subd. (a) (Retirement Board authorized to approve or deny a district as a direct report based upon specified criteria), 27703 (required documentation for district's approval).

[15] Ed. Code §§ 23001, 23004; 47611.3; see CalSTRS Employer Directive 2001-01 (Jan. 19, 2001), p. 2, available at https://resources.finalsite.net/images/v1637354371/sdcoenet/cjr1mtalgysj9vqbre8h/ed01-01.pdf (as of June 3, 2025).

[16] Ed. Code, § 23000, italics added.

4

member employees whose contributions are at issue; rather, the charter school is the employer for purposes of section 23000.[17]

But even if a county superintendent is not the employer of employees whose contributions are at issue, the superintendent is nevertheless obliged to remit contributions on behalf of the charter school employer based on independent statutory obligations as a direct report under sections 23001 and 47611.3. Section 23001 mandates that "[e]ach county superintendent . . . that reports directly to the system shall draw requisitions for contributions required by Sections 22901, 22901.7, 22950, and 22950.5 in favor of the State Teachers' Retirement System."[18] Section 47611.3 requires the county superintendent to submit reports on behalf of charter schools.[19] Do these statutes support CalSTRS's practice of penalizing the county superintendent for charter school errors? Reading them in the context of other provisions of the Teachers' Retirement Law, we conclude that they do.

Our task in construing a statutory scheme is to ascertain the intent of the Legislature so as to effectuate the purpose of the law.[20] CalSTRS's practice of imposing penalties on a county superintendent for delinquent payment of member or employer contributions is supported by the plain language of the Teachers' Retirement Law.

As we have noted, section 23001 requires the county superintendent (among other "direct reports") to make monthly contributions to CalSTRs on behalf of employers and members within the county. Specifically, it states that a direct report "shall draw requisitions for contributions required" to be paid by members and employers under the Retirement Law "in favor of the State Teachers' Retirement System."[21] Those requisitions become warrants against the county treasury when allowed and signed by the county auditor.[22] Section 23001 also requires the county superintendent to "forward the

---

[17] See CalSTRS Employer Directive 2001-01, note 15, *ante* ("Charter schools are reminded that, as an employer, they are responsible for the accuracy and timeliness of CalSTRS monthly report information and contributions for their employees").

[18] Ed. Code, § 23001. Sections 22901 and 22901.7 concern calculation of member contributions; sections 22950 and 22950.5 concern calculation of employer contributions.

[19] Ed. Code, § 47611.3, subd. (a).

[20] *Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1387-1388 (hereafter, *Dyna-Med, Inc.*); *Rodriguez v. Workers' Comp. Appeals Bd.* (2019) 39 Cal.App.5th 195, 203-204 (construing Public Employees Retirement Law); 89 Ops.Cal.Atty.Gen., *supra,* at p. 250 (Teachers' Retirement Law).

[21] Ed. Code, § 23001.

[22] *Id.* Although the Retirement Law does not expressly define the term "requisition," its

(continued…)

5

warrants to the board in the system's headquarters office."[23]  Section 23002 specifies the deadlines for submitting member and employer contributions.  And section 23003 requires the Board to assess penalties "if a county superintendent of schools . . . fails to make payment of contributions as provided in Section 23002."[24]  Section 23003 thus mandates the assessment of penalties on a county superintendent of schools who fails to timely submit county treasury warrants to CalSTRS in payment of member and employer contributions.

### b.  Penalties imposed under sections 23006 and 23008 for reporting errors

In a similar vein, section 23004 requires the county superintendent of schools (among other "direct reports") to submit a monthly report to CalSTRS "containing information as the [B]oard may require in the administration of the plan" in an encrypted format "that ensures the security of the transmitted member data."[25]  Section 23005 specifies the due date for those monthly reports.[26]  The consequences for reporting errors appear in sections 23006 and 23008.

Section 23006 requires the Board to assess penalties "if a county superintendent of schools submits monthly reports, as specified by Section 23004, late, as defined in Section 23005, or in unacceptable form."[27]  Section 23008 requires the county superintendent or other CalSTRS direct report to make adjustments on its monthly reporting for any underpayments or overpayments of contributions within 60 days of learning of the error, and states that the Board "shall assess penalties for late or improper adjustments pursuant to Section 23006."[28]

The penalty provisions of sections 23003, 23006, and 23008 require the Board to assess penalties "if" the county superintendent (or other direct report) fails to make the required contribution, reporting, or adjustment.  The statutes do not expressly direct that the penalties shall be assessed against the direct report.  But we believe that the best

---

use in this context corresponds to the dictionary definition as "requiring something to be furnished," as here requiring payment to be furnished from the county treasury to CalSTRS.  (Merriam-Webster's Collegiate Dict. (11th ed. 2003), pp. 1058-1059; Merriam Webster's Online Dictionary, available at https://www.merriam-webster.com/dictionary/requisition (as of June 3, 2025)).

[23] Ed. Code, § 23001.

[24] Ed. Code, § 23003.

[25] Ed. Code, § 23004; see Cal. Code Regs., tit. 5, §§ 27000, 27001.

[26] Ed. Code, § 23005.

[27] Ed. Code, § 23006.

[28] Ed. Code, § 23008.

reading is that the penalties may be assessed against the party (i.e., the direct report) who has failed to perform, or inadequately or insufficiently performed, the duties that the statute requires of that party. This reading draws further support from section 23010—discussed below in response to the requestor's second question—which assumes as much by providing that "[a] person or entity *that reports directly to the system that is assessed penalties or interest pursuant to Section 23003, 23006, or 23008* may appeal the assessed penalties or interest subject to the appeals process established pursuant to Section 22219."[29]

### c. Historical practice

Our understanding of this statutory scheme accords with historical practice. The Legislature has long imposed responsibility on the county superintendent for submitting employer and employee retirement contributions and reports to CalSTRS on behalf of local school districts.[30] Delinquencies in contributions or reporting would result in a withholding of subsequent State School Fund payments to the county school service fund until the error was rectified.[31] The Legislature further provided that:

> Such county superintendent of schools may in turn assess and collect from any reporting school district, reporting to such county superintendent of schools, any amount assessed by the board, including said interest, against the county superintendent of schools, where the reporting school district caused the county superintendent of schools to fail to report or to pay.[32]

As we have shown, successor statutes similarly provide for assessment of penalties on the county superintendent.[33] CalSTRS's consistent application of these statutes over a

---

[29] Ed. Code, § 23010, italics added.

[30] See, e.g., Stats. 1969, ch. 896, § 2, pp. 1768, 1770 (former Ed. Code, §§ 14105, 14109), subd. (a) ["For members whose compensation is paid by the school districts, the county superintendent shall draw requisitions against the funds of the respective school districts within the county . . . ."]); see also, *id*, pp. 1763 (former Ed. Code, § 14056 [requiring superintendent to file annual report of members and contributions]) and 1770 (former Ed. Code, § 14109 [requiring county superintendent to draw requisitions against school district funds for employer contributions and remit to the system, "along with such reports relating thereto as the board may require"]); see Ed. Code, §§ 23001, 23004.

[31] Stats. 1969, ch. 896, § 2, pp. 1763-1764 (former Ed. Code, § 14056). The county school services fund is used by the county superintendent of schools to pay expenses as authorized by law. (See Ed. Code, §§ 1600-1606.)

[32] Stats. 1971, ch. 906, § 6, p. 1754 (former Ed. Code, § 14056).

[33] Stats. 1976, ch. 1010, § 2, pp. 2952 (former Ed. Code, § 23003), 2953 (former Ed. Code, § 23006); see Ed. Code, §§ 23003, 23006.

7

period of time is an indication that the Legislature intended this settled administrative construction to establish a normative practice.[34]

In 2000, the Legislature enacted Education Code section 47611.3, which references and further specifies the county superintendent's reporting responsibility to include charter schools participating in CalSTRS.[35] This statute requires the chartering authority of a charter school—either a school district or the county board of education—to create any reports required by CalSTRS when requested by the charter school to do so. But regardless of which chartering authority creates the reports, the statute mandates that "[t]he county superintendent of schools, employing agency, or school district that reports to those systems . . . shall submit the required reports on behalf of the charter school."[36] The statute thus confirms the Legislature's expectation that the county superintendent (or, in some cases, an authorized chartering school district) reports on behalf of charter schools. Considering the plain language of the relevant statutes, and the history of their application, we are satisfied that CalSTRS's practice of assessing penalties against a county superintendent who reports on behalf of an errant charter school comports with the Legislature's expectations.

We recognize that an intermediary county superintendent who is not the chartering authority of an errant charter school may have limited ability to supervise the charter school's administrative practices.[37] Some county offices of education have attempted to

---

[34] See, e.g., *Industrial Welfare Com. v. Superior Court* (1980) 27 Cal.3d 690, 708-709; *Wotton v. Bush* (1953) 41 Cal.2d 460, 468; 64 Ops.Cal.Atty.Gen. 776, 779-780 (1981).

[35] Ed. Code, § 47611.3; Stats. 2000, ch. 466, § 1. The Legislature enacted the Charter Schools Act in 1992. (Stats. 1992, ch. 781, § 1.) At that time, the county superintendent's responsibility for submitting member and employer contributions on behalf of charter-school teachers was already encompassed by section 23001—whether those teachers are employed by the school's chartering school district or by the charter school itself as the employer for purposes of sections 22901, 22901.7, 22950, and 22950.5.

[36] Ed. Code, § 47611.3, subd. (a); see CalSTRS Employer Directive 2001-01 (Jan. 19, 2001), note 15, *ante*.

[37] But see Ed. Code, §§ 47604.3 ("A charter school shall promptly respond to all reasonable inquiries, including, but not limited to, inquiries regarding its financial records, from . . . the county office of education that has jurisdiction over the school's chartering authority . . . and shall consult with . . . the county office of education . . . regarding any inquiries"); 47604.4, subd. (a) ("[A] county superintendent of schools may, based upon written complaints by parents or other information that justifies the investigation, monitor the operations of a charter school located within that county and conduct an investigation into the operations of that charter school").

8

address this problem by contract with the charter school.[38]  In any event, our task is not to judge the wisdom of legislation, but rather "to ascertain the Legislature's intent so as to effectuate the purpose of the law."[39]  Education Code section 22213 mandates that the Board regulate the duties imposed by the Teachers' Retirement Law on employers and other public authorities, and section 22214 authorizes the Board to "take any action it deems necessary to ensure the continued right of members or beneficiaries to receive monthly payments."[40]  We believe that our construction of sections 23003, 23006, and 23008 effectuates the Legislature's purpose.[41]

## 2. An Intermediary County Superintendent May Seek and Obtain Administrative Review of CalSTRS Penalty Assessments

Given our conclusion that CalSTRS may assess penalties against an intermediary county superintendent based on contribution or reporting errors attributable to a charter school on whose behalf the superintendent was acting, we now address the question whether that county superintendent may appeal a CalSTRS penalty imposed on account of such errors.  We conclude that the superintendent does have a right of appeal in this circumstance.

As mentioned above, Education Code section 23010 provides that "[a] *person or entity that reports directly to the system* that is assessed penalties or interest pursuant to Section 23003, 23006, or 23008 may appeal the assessed penalties or interest subject to

---

[38] See, e.g., Santa Clara County Office of Education, Direct Funded Charter School Retirement Reporting Agreement for Fiscal Year 2021- 2, available at https://tinyurl.com/377faxab (as of June 3, 2025); San Diego County Office of Education, "Agreement For Charter School Retirement Reporting Services," available at" https://tinyurl.com/mw3cvbt7 (as of June 3, 2025).

[39] *Dyna-Med, Inc.*, *supra*, 43 Cal.3d at p. 1386; see also *Wells Fargo Bank v. Superior Court* (1991) 53 Cal.3d 1082, 1099; 96 Ops.Cal.Atty.Gen. 29, 34 & fn. 32 (2013).

[40] Ed. Code, §§ 22213, 22214.

[41] The requestor notes that it is "likewise unclear" whether the Board can properly withhold a county office of education's funding under Education Code section 23007 if that office fails to pay a penalty that the Board assesses.  (See Ed. Code, § 23007 ["If any county superintendent, . . . , or other employing agency that reports directly to the system fails to make payment of any assessment by the board, the Controller shall, upon order of the board, withhold subsequent payments from the State School Fund to the county for deposit in the county school service fund . . . ."].)  That concern was premised on an asserted lack of clarity as to whether the Board could lawfully assess penalties against an intermediary school superintendent in the first instance.  Given our conclusion that it may indeed do so, it follows that the Board is authorized to withhold funding under section 23007 when faced with a superintendent's failure to pay lawfully assessed penalties.

23-601

the appeals process established pursuant to Section 22219."[42]  The descriptor "person or entity that reports directly to the system" includes an intermediary county superintendent, but not the charter school on whose behalf the superintendent reports.  Education Code section 22219 vests the Board with discretion to "hold a hearing for the purpose of determining any question presented to it involving any right, benefit, or obligation of a person under [Part 13, pertaining to the State Teachers' Retirement System]."[43]  Any such hearing must be conducted pursuant to statutes governing formal administrative adjudications.[44]

Teachers' Retirement Board regulation 27009—which implements section 23010—provides that an administrative hearing "shall be available" for disagreements over the Board's assessment of penalties.[45]  The phrase "shall be available" has been construed to refer to "a mandatory requirement, not a conditional one."[46]  And the word "shall" is generally used in laws, regulations, or directives to express what is mandatory; "may," on the other hand, is usually permissive.[47]  Thus, we may readily conclude that an

---

[42] Ed. Code, § 23010, italics added.

[43] Ed. Code, § 22219, subd. (a); see *id.* §§ 22000-25115 [Part 13].

[44] Ed. Code, § 22219, subd. (b); see Gov. Code, § 11500 et seq.

[45] Cal. Code Regs., tit. 5, § 27009, italics added ("An administrative hearing shall be available to an employer that reports directly to the system when there is disagreement over the assessment of penalties, interest, or both, pursuant to this article. . . ."); see generally Cal. Code Regs., tit. 5, div. 3, ch. 1, art. 15.5 ("Penalties and Interest for Late Remittances and Late and Unacceptable Reporting by Employers"), § 27000 et seq. Although regulation 27009 uses the term "*employer* that reports directly to the system," and a county superintendent is usually not the employer of the charter school's employees, the county superintendent is nevertheless both an "employer" as defined by Education Code section 22131 with respect to its own employees and a direct report to CalSTRS on behalf of charter school employers.  (See Ed. Code, § 47611.3; see also CalSTRS Employer Directive 2001-01, note 15, *ante.*)  In any case, the controlling statute—Education Code section 23010—makes clear that "the person or entity that reports directly to the system" may appeal from penalties assessed under section 23003, 23006, or 23008.  That phrasing plainly encompasses an intermediary county superintendent.  Administrative regulations must be construed in a manner consistent with the legislative purpose and may not conflict with the statute under which they are promulgated.  (See *Transworld Systems, Inc. v. County of Sonoma* (2000) 78 Cal.App.4th 713, 717; see also Gov. Code, § 11342.2.)

[46] See, e.g., *Alameda County Waste Management Authority v. Waste Connections US, Inc.* (2021) 67 Cal.App.5th 1162, 1180.

[47] Ed. Code, §§ 10 ("Unless the provisions or the context otherwise requires these general

(continued…)

intermediary county superintendent is entitled to seek and obtain an adjudicative administrative hearing in a case of disagreement with CalSTRS concerning the assessment of penalties or interest under section 23003, 23006, or 23008, arising from errors attributable to a charter school for which the county superintendent is reporting.[48]

Before turning to the next question, however, we note that the requestor expresses some concern over how an intermediary county superintendent could sufficiently "defend itself" in an appeal from a penalty assessed due to an employer charter school's contribution or reporting error. The requestor observes that a superintendent may lack sufficient knowledge of the charter's "reporting practices, employment relationships, job duties, or contribution data," and the charter school may have "little incentive" to help the superintendent litigate the appeal.

We appreciate the requestor's concern, but as discussed immediately below, an intermediary county superintendent ultimately has the authority to recover funds used to pay penalties assessed due to the charter school's errors from the funds allotted to the errant charter school. So there is an apparent financial incentive for the charter school to provide relevant information, evidence, and explanations, and otherwise to cooperate with the county superintendent in any appeal that the superintendent takes on the charter's behalf. The Legislature has crafted a penalty assessment and appeal scheme in which an intermediary county superintendent is charged with representing the interests of an errant charter school in an appeal taken under these circumstances. No other administrative remedies are prescribed. We understand that some may question the

provisions, rules of construction, and definitions shall govern the construction of this code"), 75 ("'Shall' is mandatory and 'may' is permissive"); see also *People v. Standish* (2006) 38 Cal.4th 858, 869-870 (presumption is that the word "shall" in a statute is ordinarily deemed mandatory); *Hogya v. Superior Court* (1977) 75 Cal.App.3d 122, 133 (same). We also note that, with respect to forfeiture of an administrative hearing for lack of a timely request, regulation section 27009 is similarly cast in mandatory terms: "If no request for an administrative hearing is made within the time prescribed, the penalties, interest, or both assessed *shall be final* and any right to an administrative hearing or judicial review *shall be deemed forfeit and waived*." In this case, we have no basis for concluding that the Board intended "shall" to mean discretionary with respect to the grant of a hearing but mandatory with respect to its forfeiture.

[48] See Cal. Code Regs., tit. 5, § 27009. An administrative agency's adjudicative decision is judicially reviewable via a petition for administrative mandamus under Code of Civil Procedure section 1094.5, while a denial of an adjudicative hearing is ordinarily subject to judicial review via traditional mandamus under Code of Civil Procedure section 1085. (See Gov. Code, § 11523 ["Judicial review may be had by filing a petition for a writ of mandate in accordance with the provisions of the Code of Civil Procedure, . . ."]; see also *Morton v. Hollywood Park* (1977) 73 Cal.App.3d 248, 254 [Section 1085 "anticipates an arbitrary . . . refusal of a duly constituted board to hold a hearing."].)

wisdom of the policy embodied by this scheme. But it is not our role to consider what may be the most desirable or effective policy, only to determine what the law provides.[49] Any change in current policy and the law that embodies it is a matter for the Legislature.

### 3. An Intermediary County Superintendent May Recover Funds Used to Pay an Assessment or Penalty Imposed by CalSTRS as a Result of a Charter School's Contribution or Reporting Error from the Funds Allotted to the Errant Charter School

Finally, we consider whether the county superintendent may recover funds used to pay penalties assessed as a result of a charter school's contribution or reporting error from the funds allotted to the errant charter school. We conclude that a county superintendent may do so.

As we noted earlier, the Legislature described its theory for allocating responsibility between an intermediary county superintendent of schools and the employers for whom the county superintendent directly reports in 1971.[50] It restated that theory in Education Code section 24616.2(a)(3), in connection with recovery of benefit overpayments. That statute provides that if overpayments are made due to errors of the county superintendent, the overpayments must be recovered "from that county superintendent"; but "if an overpayment resulted from an error of an employer, the county superintendent of schools may recover the amounts required from that employer pursuant to Section 23012."[51]

The Legislature enacted section 23012 at the same time as section 24616.2.[52] But section 23012 is not limited to recovery of benefit overpayments. To the contrary, subdivision (a) grants broad authority to the county superintendent to recover the cost of penalties from errant employing agencies:

> For the purpose of remitting contributions, assessments, or any other payment required by the system, the county superintendent of schools that reports directly to the system may, on an annual basis or as otherwise directed by the system, draw requisitions against the county school service fund and the funds of the county's respective employing agencies in amounts equal to the total required to be paid by the employing agency.[53]

---

[49] See *Dyna-Med, Inc.*, *supra*, 43 Cal.3d at p. 1386.

[50] See note 32, *ante*, and accompanying text.

[51] Ed. Code, § 24616.2, subd. (a)(3); Stats. 2022, ch. 754, § 11.

[52] Stats. 2022, ch. 754, § 9.

[53] Ed. Code, § 23012, subd. (a).

We have little difficulty construing section 23012(a) to encompass assessments imposed pursuant to section 23003, 23006, or 23008. On its face, section 23012(a) defines its purpose as "remitting contributions, *assessments*, or *any other payment* required by the system."[54] The word "assessment" is used frequently in connection with penalties imposed by the Board.[55] The statutory language itself is the best indicator of legislative intent.[56] Moreover, unlike section 24616.2, section 23012 was deliberately situated in Chapter 17 of the Retirement Law, relating to "Employer Collection and Reporting Procedures."[57] This placement is further evidence that the Legislature intended subdivision (a) to encompass payments or penalties owing under chapter 17.[58]

Indeed, an early version of the bill that enacted section 23012 read in its entirety as subdivision (a) reads today, which might have been construed to limit the statute's application *only* to assessments made under chapter 17.[59] To eliminate any confusion, the bill was later amended to add subdivision (b), with its express cross-reference to section 24616.2:

> (b) Additionally, the county superintendent of schools may draw requisitions against the county school service fund and the funds of the county's respective employing agencies, as applicable, in amounts necessary for recovering payments made pursuant to Section 24616.2.[60]

We are persuaded that the Legislature intended section 23012 to permit an intermediary county superintendent to recover from an errant charter school employer, for whom the county superintendent reports, penalties and assessments imposed by CalSTRS on the superintendent because of errors committed by that charter school.

---

[54] Ed. Code, § 23012, subd. (a), italics added.

[55] See Ed. Code, §§ 23003, 23006, 23008.

[56] *Khajavi v. Feather River Anesthesia Medical Group* (2000) 84 Cal.App.4th 32, 45-46; 91 Ops.Cal.Atty.Gen. 19, 20 (2008).

[57] Ed. Code, tit. 1, div. 1, pt. 13, ch. 17, § 23000 et seq.; see official heading, Stats. 1993, ch. 893, § 2, p. 4930.

[58] Ed. Code, tit. 1, div. 1, pt. 13, ch. 17, § 23000 et seq. For purposes of discerning legislative intent, courts may consider statute headings that are official and not merely added by the publisher. (See 99 Ops.Cal.Atty.Gen. 56, 57, fn. 10 (2016), and authorities collected there.)

[59] See Assem. Bill No. 1667 (2021-2022 Reg. Sess.), as amended March 24, 2022, § 8.

[60] Assem. Bill No. 1667 (2021-2022 Reg. Sess.) as amended Aug. 1, 2022, § 9.